SIMON, Justice.
 

 Plaintiff brought suit for compensation under Paragraph 2 of LSA-R.S. 23:1221 (formerly Paragraph B of Subsection 1 of Section 8 of the Employer’s Liability Act, Act No. 20 of 1914, as variously amended) for an injury alleged to have produced permanent total disability to do work of any reasonable character, and to recover penalties and reasonable attorney’s fees as provided for by LSA-R.S. 22:658 (formerly Section 14:48 of the Insurance Code, Act 195 of 1948).
 

 The trial court awarded plaintiff compensation benefits as of total permanent disability not to exceed 400 weeks, subject to credits for the amounts previously paid as compensation benefits, and denied his claim for penalties and attorney’s fees. This judgment was affirmed by the Orleans Court of Appeal. Plaintiff applied for and was granted a writ of certiorari to have us review the judgment denying penalties and attorney’s fees. Hence the sole question here presented is whether he is entitled to this assessment.
 

 The pertinent parts of LSA-R.S. 22 :- 658 require all insurers insuring any type of contract, other than those specified in LSA-R.S. 22:656 and 22:657, to pay the amount of any claim due any insured including any employee under our Workmen’s Compensation Statute (Chapter 10 of Title 23, LSA-R.S.) within sixty days after receipt of satisfactory proof of loss from the employee, and failing to do so, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the
 
 *63
 
 insurer to a penalty, in addition to the amount of the loss, of 12% damages for the total amount of the loss, payable to the employee, together with all reasonable attorney’s fees for the prosecution and collection of such loss.
 

 We find the facts of the case to be as follows:
 

 On July 1, 1957, plaintiff was an employee of Lionel F. Favret Company, Inc., discharging his duties as a carpenter in connection with the construction of the Monteleone Hotel Garage. On that date he received back injuries in an accidental fall from a lumber scaffold which arose out of and in the course of his employment. He immediately reported the accident to his foreman, and on the following day was referred by his employer to Drs. Houston, Roy & Faust. Dr. Faust, after an examination, diagnosed plaintiff’s injury as a lumbar and lumbosacral joint strain, and prescribed the application of heat, complete rest on a firm and rigid bed, and the use of codeine to alleviate pain.
 

 As plaintiff failed to make satisfactory progress as an office patient, Dr. Houston, on July 24, 1957, placed him as a patient in Touro Infirmary for treatment consisting of bed rest, bilaterial leg .traction and physiotherapy treatment. He was discharged from the hospital on August 3, 1957.
 

 On September 16, 1957, Dr. Houston referred plaintiff to Dr. H. R. Soboloff, orthopedic specialist retained by the defendant insurer. After examining plaintiff Dr. Soboloff recommended that he “should be given a trial on returning to work.” On September 20, 1957 Dr. Houston thereupon discharged plaintiff with instructions to return to work and resume his former occupation. On the same day plaintiff returned to the Monteleone Hotel Garage and requested that he be allowed to work, but was advised by the employer’s superintendent that no additional employees were needed, the work force being gradually decreased due to the near completion of the project.
 

 On September 23, 1957, plaintiff secured work as a carpenter for a Mr. Johnson. Due to severe back pains he was, however, unable to perform his duties and so notified his employer. On September 26, 1957, because of recurring incapacitating pain, he returned to the offices of Drs. Houston, Roy and Faust. After an examination, Dr. Houston, theorizing that the pain plaintiff claimed to be experiencing was not usually associated with a herniated disc, thereupon referred plaintiff to Dr. Gilbert Tomskey, an urologist. Dr. Tomskey concluded that plaintiff was suffering from chronic prostatitis, but reported to the defendant insurer that he did not believe this condition was the sole cause of plaintiff’s back pain. Neither Dr. Houston nor Dr. Soboloff saw-plaintiff again until the date of trial below.
 

 On the same day plaintiff visited his own physician, Dr. Vernon Kroll, a general
 
 *65
 
 surgeon, who found objective evidence of back injury, and concluded that plaintiff was unable to resume his former duties. On the basis of plaintiff’s injury and persistent backaches, Dr. Kroll strongly suspected a ruptured intervertebral disc and recommended that plaintiff consult a neurosurgeon.
 

 On September 28, 1957, the defendant insurer cancelled payment of all workmen’s compensation benefits to plaintiff.
 

 On October 17, 1957 and December 9, 1957, plaintiff consulted Dr. Homer D. Kirgis, a neuro-surgeon at Ochsner Clinic. He concluded that plaintiff “had sustained a rather sever compression of the fifth lumbar nerve on the left with herniation of the fourth lumbar intervertebral disc.” He advised plaintiff that a myelogram test was unnecessary to confirm his conclusion because plaintiff’s history and clinical findings were typical of the ruptured intervertebral disc syndrome. A copy of Dr. Kirgis’ report was received by the defendant insurer on January 3, 1958.
 

 Defendant insurer, on February 7, 1958, referred plaintiff to Dr. George Battalora, an orthopedist. Dr. Battalora reported in writing to the insurer that plaintiff “presented findings which were indicative of lower lumbar disc herniation.” He suggested plaintiff be given benefit of a myelogram and if it showed definite herniation, he would then recommend surgery.
 

 The defendant insurer refused to renew or reinstate plaintiff’s workmen’s compensation benefits. Thereafter, on March 24, 1958, plaintiff instituted suit against the defendants, employer and insurer.
 

 On May 15, 1958, the defendant insurer referred plaintiff to Dr. Richard Corales, a neuro-surgeon. Dr. Corales reported to the insurer that plaintiff’s condition “was suggestive of nerve root involvement, most likely 1^5 nerve root on the left side * * * diagnosis that must be considered as ruptured intervertebral disc at this interspace.
 

 Plaintiff was re-examined on May 17, 1958, by Dr. Kirgis and again on May 19, 1958, and as a result of which he reaffirmed his previous opinion that plaintiff had suffered a ruptured intervertebral disc. This suit was heard on its merits beginning May 27, 1958.
 

 The defense of the insurance company is that it was fully justified in terminating plaintiff’s compensation payments when the reports of Dr. Houston and Dr. Soboloff of date September 20, 1957, and September 16, 1957, respectively, indicated that plaintiff “should be given a trial on returning to work,” both being of the belief that he could resume his work as a carpenter. To defendant insurer’s defense that relying on this recommendation it was justified in stopping plaintiff’s compensation payments, we make no comment as the pivotal ques
 
 *67
 
 tion presented concerns whether defendant insurer acted in a capricious, arbitrary and unreasonable manner in not reinstating the compensation payments after it was so positively established and brought to its attention, firstly on September 26, 1957, that plaintiff had tried to return to work and had been unable because of severe back pain to perform any manual labor of any character, particularly as a carpenter.
 

 After returning to work as recommended by Dr. Houston and Dr. Soboloff, plaintiff found the pain in his back too severe to carry out his duties as a carpenter. As shown, he immediately returned to Dr. Houston’s office for further examination and treatment. Dr. Houston, the retained medical doctor of the insured, testified that he attempted to make an examination but that plaintiff exhibited such pain that he felt there must be some other cause than that of the back injury and sent plaintiff to Dr. Tomskey, an urologist. Dr. Tomskey reported to Dr. Houston that plaintiff was suffering from chronic prostatitis, but that this chronic ailment was not the sole cause of the pain which plaintiff was experiencing. Despite this report of Dr. Tomskey, Dr. Houston made no further examination of plaintiff in an effort to ascertain the cause of plaintiff’s severe backaches nor was plaintiff offered any further treatment by defendant insurer’s doctors. Of necessity, plaintiff was constrained to consult his own 'neuro-surgeon, Dr. Kirgis, who, after examination, concluded that plaintiff was suffering from a ruptured intervertebral disc. This diagnosis was shortly thereafter confirmed by defendant insurer’s own doctor, Dr. Battalora. Despite the diagnosis of doctors of both plaintiff and defendants that plaintiff was incapacitated, defendant insurer completely ignored these findings and made no effort to reinstate or to offer the compensation benefits to which plaintiff was legally entitled, thereby compelling him to seek redress by suit for the benefits the statute allows him, an elapsed time from September 20, 1957, to March 24, 1958, or a period of six months.
 

 It is also shown that not only were these findings of Drs. Houston and Tomskey, insurer’s own doctors, made known to it, but it received, on January 3, 1958, a copy of the medical findings of Dr. Kirgis, neuro-surgeon of Ochsner Clinic, made on October 17, 1957, and December 9, 1957, wherein it was the doctor’s conclusion that plaintiff “had sustained a rather severe compression of the fifth lumbar nerve on the left with herniation of the fourth lumbar intervertebral disc,” from which he further concluded was typical of a “ruptured intervertebral disc syndrome.” It is significant that on February 7, 1958, the defendant insurer referred plaintiff to Dr. Battalora, an equally eminent orthopedist, who thereupon reported to the defendants that plaintiff “presented findings which were indicative of lower lumbar disc herniation”
 
 *69
 
 and which would probably require surgery. Again these findings of total incapacity, as was later established and found by the trial and appellate court, were completely disregarded.
 

 As the sole question for our determination is whether defendant insurer was in good faith in not reinstating compensation payments, the medical testimony as to plaintiff’s condition following the termination of the payments affords the only criteria for determining whether or not defendant insurer acted unreasonably, arbitrarily and without probable cause in not resuming plaintiff’s compensation payments.
 

 Since all the medical records were available to defendant insurer, it being well aware that plaintiff was suffering a crippling injury, and despite the practically unanimous medical testimony showing his continuing total incapacity, defendant insurer acted in an unreasonable, arbitrary, and capricious manner in not resuming the payment of compensation benefits, thus forcing plaintiff to have to litigate in order to enjoy the benefits afforded him under our law. Obviously, its total disregard of plaintiff’s continuing disability was indefendible.
 

 Defendant insurer cites Gillespie v. American Bakeries Co., La.App., Orleans, 98 So.2d 104, and Teekell v. Travelers Insurance Co., La.App., 2d Cir., 83 So.2d 536, as being controlling of the issues here presented. These cases, however, are-clearly distinguishable. In the Gillespie case, supra, plaintiff introduced testimony of only one medical witness, an orthopedist, who testified that he found symptoms of a herniated disc but that he would abide by the findings of a neuro-surgeon. Because plaintiff did not introduce any testimony by a neuro-surgeon, the court properly relied on the testimony of defendant’s two neuro-surgeons whose testimony was adverse to plaintiff’s contentions. In the instant case, there is no conflict in the testimony of both plaintiff’s and defendants’ doctors and specialists who examined plaintiff after the compensation payments were discontinued.
 

 In the Teekell case, supra, defendant denied that plaintiff had received an accidental back injury. Thus the type of accidental injury involved therein was seriously susceptible to question. Whereas, in the instant case, the total permanent disability as a result of plaintiff’s accidental injury was amply evident from its outset.
 

 In Fruge v. Pacific Employers Insurance Company, 226 La. 530, 76 So.2d 719, we held that though there may have been a bona fide dispute between the insurer and employer as to whether the latter was entitled to compensation for total and permanent disability, that the insurer could not have been in good faith when there could not have been any dispute as to plaintiff’s disability, less than total, and that there was
 
 *71
 
 no justification for the discontinuance of compensation. We accordingly held such stoppage to be arbitrary, capricious, and without probable cause, thereby subjecting the defendant to the penalties and attorney’s fees provided in the statute, supra. See Wright v. National Surety Corporation, 221 La. 486, 59 So.2d 695.
 

 In the instant case, defendant insurer received the unanimous periodical reports of the litigants’ doctors and experts affording it full and unquestionable notice of the total and permanent character of plaintiff’s disability preventing his return to gainful employment. It is apparent that defendant insurer heedlessly ignored these medical reports at hand, and made no effort to reinstate the payment of compensation due plaintiff during an elapsed period of six months forcing him to resort to the filing of this suit. We necessarily conclude that such conduct was arbitrary, capricious, and without probable cause, thereby subjecting defendant insurer to statutory penalties and attorney’s fees.
 

 Accordingly, for the reasons assigned, that feature of the judgment of the Orleans Court of Appeal denying, plaintiff statutory penalties and attorney’s fees is annulled, reversed and set aside.
 

 It is now ordered that said judgment be amended condemning defendants to pay a penalty of 12% on all weekly compensation payments which are now due, with a like penalty on all such payments which might become sixty days overdue in the future, together with attorney’s fees, all payable to the plaintiff, in the sum of $750. All costs are to be paid by the defendants.