171 So.2d 293 (1965)
HOSPITAL SERVICE DISTRICT NO. 1 OF the PARISH OF PLAQUEMINES, State of Louisiana, et al.
v.
DELTA GAS, INC., et al.
No. 1533.
Court of Appeal of Louisiana. Fourth Circuit.
January 11, 1965.
Rehearing Denied February 8, 1965.
Writ Refused April 15, 1965.
*295 Lemle & Kelleher, Carl J. Schumacher, Jr., Paul B. Deal, and Albert H. Hanemann, Jr., New Orleans, for Travelers Ins. Co., third-party defendant-appellant.
Adams & Reese, George V. Baus, New Orleans, for Bankers Fire and Marine Ins. Co., third-party defendant-appellant.
Gerald J. Gallinghouse, Arthur C. Reuter, and J. Richard Reuter, Jr., New Orleans, for Pittman Const. Co., Inc., third-party plaintiff-appellant-appellee.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Ernest A. Carrere, Jr., John V. Baus, New Orleans, for Cabirac Mechanical Contractors, Inc. and Liberty Mut. Ins. Co., third-party defendants-appellees.
Before YARRUT, CHASEZ, and TURNER, JJ.
YARRUT, Judge.
This appeal is from the judgment in two suits (Nos. 5623 and 5658) consolidated for trial in the district court, both resulting from an explosion and fire that destroyed a hospital at Port Sulphur, Plaquemines Parish, which Pittman Construction Company, as general contractor, had recently erected for the Hospital Service District No. 1 of Plaquemines Parish, at a cost of $789,186.68.
In suit No. 5658, Louis Henry Cabirac sued Delta Gas, Inc. and various furnishers of material used in the construction of the hospital, and their respective liability insurers, claiming $295,750.00 damages for personal injuries suffered as a result of their joint negligence. Plaintiff was employed as a foreman for Cabirac Mechanical Contractors, Inc., a subcontractor of Pittman Construction Company, and was paid workmen's compensation by the subcontractor's compensation insurer.
In suit No. 5623, the Hospital Service District No. 1 sued Delta Gas, Inc., other defendants and their liability insurers, in solido, to recover for the total loss of the hospital caused by their alleged joint negligence.
In suit No. 5658, judgment was rendered in favor of Louis Henry Cabirac and against Delta Gas, Inc., alone, which judgment was paid without an appeal.
In case No. 5623, prior to the trial of the main demand on December 5, 1961, by stipulation between the Hospital District and its insurers, and various original defendants, other than Travelers, Bankers, Agricultural, Cabirac Mechanical Contractors, Inc. and Liberty Mutual, the main action was compromised and dismissed for $600,000.00; of which Pittman contributed $62,500.00. In making this contribution, Pittman reserved its third-party demand against Travelers, Bankers, Cabirac Mechanical Contractors, Inc. and Liberty Mutual, later supplemented to recover $101,041.62, which includes the $62,500.00 paid toward the compromise settlement, $14,305.57 attorney's fees incident to this settlement and to the investigation of the explosion, $10,447.31 experts fees for the investigation of the explosion, $609.40 miscellaneous other fees and $13,179.34 contingent attorney's fees for the recovery of damages in the present suit; plus statutory penalties of 12%.
Bankers filed a supplemental and amending answer to the third-party petition alleging, among other things, that the Bankers policy did not provide coverage to injury or destruction of any goods, products or containers thereof manufactured, sold, handled or distributed, or premises alienated by the named insured, or work completed, by or for the named insured, out of which the accident arose; that Pittman had violated the terms of the policy through lack *296 of cooperation; and that Bankers could not be liable to Pittman since judgment was rendered in both of the consolidated cases holding the explosion and resulting damage was due solely and only to the negligence of Delta Gas, Inc., its agents and employees. Travelers answered that its policy had been cancelled before the explosion.
The district court then rendered judgment in favor of Pittman against Travelers and Bankers, in solido, for the total claim of $101,041.62 (except the 12% statutory penalty), with interest from December 5, 1962, and all costs of this suit. Cabirac Mechanical Contractors, Inc. and its insurer, Liberty Mutual Insurance Company, were dismissed.
From this judgment suspensive appeals were perfected by Travelers and Bankers, and Pittman perfected a devolutive appeal from the judgment denying penalties, and from the dismissal of Cabirac and Liberty Mutual as third-party defendants.
By stipulation, the records in the consolidated cases are part of the record on appeal.
The compromise settlement of suit No. 5623 was without the consent of Cabirac Mechanical Contractors, Inc., and Liberty Mutual, and with the reservation that all issues between Pittman and its insurers (Travelers, Bankers, and Agricultural); Cabirac Mechanical Contractors, Inc. and its insurer (Liberty Mutual), remained to be tried in the same proceeding. The dismissal of Agricultural on an exception was affirmed by this Court. La.App., 141 So. 2d 925.
Thus, the questions presented on this appeal are: (1) Was Travelers policy cancelled before the explosion? (2) Does Travelers policy cover this "accident?" (3) Does Bankers policy cover this "occurrence?" (4) Did Pittman notify, and cooperate with, Bankers? (5) Are Cabirac and Liberty Mutual liable to Pittman? (6) Are Travelers and Bankers liable to Pittman for amounts in excess of their policy limits? (7) Should 12% statutory damages be allowed?
1Was Travelers Policy Cancelled Prior to the Explosion?
The Insurance Code (LSA-R.S. 22:1 et seq.) minutely details how a policy is to be cancelled by the insurer (LSA-R.S. 22:636), and by the insured (LSA-R.S. 22:637). The policy itself provides:
"Cancellation. This policy may be cancelled by the named insured (Pittman) by mailing to the company (Travelers) written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the company (Travelers) by mailing to the named insured (Pittman) at the address shown in this policy (2925 Franklin Avenue, New Orleans, Louisiana) written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing * * *." (Parenthetical inserts supplied.)
Neither the requirements of the policy, nor those of LSA-R.S. 22:636 or 22:637 (to effect a cancellation), were satisfied.
Travelers, in effect, admits the policy was not cancelled in accordance with the policy or statute; but contends that John W. Whitty, Jr., of Meyers, Whitty & Hodge (insurance agents) was Pittman's agent, who cancelled the policy on behalf of Pittman.
Mr. Whitty testified he is an officer of Meyers, Whitty & Hodge, general agent for Travelers and as their "authorized agent," countersigned the policy issued by Travelers.
*297 Whitty explained that, in August 1959, Pittman requested him to provide insurance that would satisfy the Orleans Parish School Board, as owner, in connection with the construction of a new school awarded to Pittman; and, Bankers, which he also represented, authorized him to issue to Pittman, as of September 8, 1959, a policy with increased monetary limits, and broader coverage on an "occurrence," rather than an "accident," basis when Travelers declined to provide this type of policy; and expressed their wish to terminate their policy as of October 1, 1959. The policy was countersigned by Meyers, Whitty & Hodge, as the authorized agent for Bankers.
Whitty admitted that Pittman did not tell him to cancel the Travelers policy.
Anthony Dietlein, a witness for Travelers, testified that Whitty arranged with Bankers for the issuance of the new policy on an "occurrence" basis after he, Dietlein, advised Whitty, in effect, that he had sold this insurance to Pittman due to the Orleans Parish School Board's insurance specifications for the new school.
Dietlein said he was not Pittman's broker but an insurance salesman who solicited and sold insurance to Pittman, as he would to any other customer, and placed most of the insurance that he solicited with Meyers, Whitty & Hodge, in whose place of business he had a private phone and office, and by whom he was paid commissions on the insurance he produced.
Dietlein admitted Pittman at no time authorized him to cancel Travelers policy.
Gallinghouse, Pittman's attorney, testified at length about the investigation that was made of the explosion by the various experts, the expenses incurred, and the events subsequent to the explosion; and that, immediately after learning of the explosion, he phoned Whitty, requesting the insurers conduct an investigation and provide a defense for Pittman; and, almost daily for three weeks, was in contact with Whitty.
It was only in a letter dated September 24, 1959, that Meyers, Whitty & Hodge, as Travelers' agent, asked Pittman to surrender Travelers policy, to which Pittman's attorney, on October 1, 1959, advised Meyers, Whitty & Hodge, as Travelers' agent, that Pittman would not surrender the Travelers policy.
On October 15, 1959, by letter to Pittman, Travelers, for the first time, declared its policy would be cancelled on October 27, 1959, at 12:01 a. m., if the previous attempted cancellation was ineffective, a belated attempt to comply with LSA-R.S. 22:636, long after the explosion.
In view of this testimony we must conclude: Whitty was not Pittman's agent; Pittman did not request or authorize Whitty to cancel Travelers policy, and did not ratify the alleged cancellation; Travelers policy was not cancelled until October 27, 1959, 45 days after the explosion, per Travelers letter of October 15, 1959; and, Travelers policy was in full force and effect at 8:15 a. m. on September 12, 1959, when the explosion occurred.
In cases where the insurer defends on ground of cancellation of policy, insurer carries the burden of establishing facts which relieve or limit its liability. LSA-R.S. 22:636; Skipper v. Federal Ins. Co., 238 La. 779, 116 So.2d 520; Paz v. Implement Dealers Mutual Ins. Co., La.App., 89 So.2d 514.
Travelers' contention that Travelers and Bankers policies are mutually exclusive, and that both policies could not be in effect at the same time, is untenable.
Both policies, prepared by the insurers, not only contemplate "other insurance" but also expressly provide for the distribution of liability on a pro rata basis when there is such "other insurance" viz.:
"12. Other Insurance. If the insured has other insurance against a loss covered by this policy the company *298 shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss."
In view of the allegations in the original petition of the Hospital Service District, charging negligence against Pittman and Cabirac, Travelers was obligated to defend Pittman even if such suit proved groundless, false or fraudulent; and to pay on behalf of Pittman any adverse judgment for damages because of injury to, or destruction of, property, including the loss of use thereof, caused by accident.
2Does Travelers Policy Cover This "Accident"?
Regarding Travelers contention that its policy affords no protection because of the exclusion in their policy, viz.:
"(h) under Coverage B, to injury to or destruction of * * *
"(4) * * * work completed by or for the named insured, out of which the accident arises; * * *."
it is clear that Travelers policy expressly covers products hazards, including completed operations, of both carpentry construction for $750,000; and concrete construction for $750,000, and other specific construction hazards, including roofing, plumbing, and electrical; reinforced by Endorsement 6110A that excludes certain hazards incidental to "excavating" or "drilling," reading:
"* * *; however, this exclusion does not apply with respect to (1) liability assumed by the insured under any contract covered by this policy, (2) to operations performed for the named insured by independent contractors, (3) to completed or abandoned operations within the meaning of paragraph 2 of the Products Hazard, or (4) to operations stated, in the company's manual, as not subject to this exclusion." (Parenthetical number inserts and emphasis supplied.)
This identical language is included in Endorsement 6109A that pertains to the exclusion of certain property damage arising from certain explosion and collapse hazards, not applicable here, and is the only reasonable interpretation to be placed on these clauses in view of the definition of the term "operations" in paragraph (2) under "Definitions" of the term "products hazard," to-wit:
"3. Definitions

"(c) Products Hazard. The term `products hazard' means * * *
"(2) operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the named insured; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; * * *."
Since Travelers comprehensive general liability policy covers all classes of hazards, including "completed operations," it is apparent that cases cited by Travelers in support of this contention are not applicable here.
The policy here would provide coverage for the damage to the hospital, even if it were to be considered as completed, and without the endorsement that expressly included "completed operations" as all ambiguities and uncertainties are construed in favor of the insured. Kendrick v. C. N. Mason Co., 234 La. 271, 99 So.2d 108; Poynter v. Fidelity & Casualty Co. of New York, La.App., 140 So.2d 42; Thibodeaux v. Parks Equipment Co., La. App., 140 So.2d 215.
From the facts and the law it is clear that Travelers policy was in effect at the time of, and does cover, the explosion. *299 Moreover, even if the provision excluding "work completed by the named insured" were interpreted, as Travelers urges, to mean the policy does not cover damage to the building constructed by Pittman, it would surely cover goods belonging to a third party. The petition of the Hospital District alleged that the total damage to furnishings, fixtures and equipment other than the building totaled $78,090.68.
3Bankers Policy Does Cover This "Occurrence"
Bankers, like Travelers, is a "comprehensive liability" policy issued through Meyers, Whitty & Hodge, their authorized agent, for the period September 9, 1959, through September 8, 1960; and was in full force and effect when the explosion occurred on September 12, 1959. The policy contained provisions, similar to that of Travelers, which expressly comprehended products hazards, including "completed operations."
Bankers policy is broader than Travelers, in that it provides the most comprehensive property damage liability insurance coverage possible to Pittman on an "occurrence," rather than an "accident," basis; and "occurrence" being defined as "an unexpected event or happening which results in bodily injury or property damage during the policy period * * *, provided the insured did not intend or anticipate that injury or damage to property would result."
Therefore, Bankers is exposed to liability and obligated to protect and defend Pittman against any suit for damages Pittman might become obligated to pay, caused by any "occurrence" during the policy period.
The classification of "hazards" and "exclusions" clauses in the Bankers policy is very similar to those found in the comparable provisions of Travelers policy.
Therefore, it must be concluded that Bankers policy does cover the explosion "occurrence" on September 12, 1959.
4Did Pittman Notify, And Cooperate With, Bankers?
As previously stated, Mr. Gallinghouse, Pittman's attorney, notified Mr. Whitty of the explosion immediately after the occurrence on September 12, 1959, in a telephone call from Port Sulphur and kept him posted daily for the next three weeks.
On September 17, 1959, five days after the occurrence, Pittman confirmed by letter to Meyers, Whitty & Hodge, as the authorized agent for both Travelers and Bankers, their previous verbal advice relative to the explosion, and urged that they have the insurers investigate the explosion and defend Pittman.
Bankers did not investigate nor provide a defense for Pittman. The first response from Bankers was on February 2, 1961, when their attorney wrote to Pittman's attorneys suggesting they would defend Pittman if Pittman would first dismiss its third-party complaint against Bankers. February 2, 1961, was seventeen months after the explosion; six months after the original suit was filed, and four months after Pittman filed its answer and a third-party petition against Bankers and others. Bankers' answer to the original petition was filed January 18, 1961, and their answer to Pittman's third-party petition on March 6, 1961; in which Bankers denied any liability to Pittman.
Regarding Pittman's alleged refusal to cooperate, the testimony shows that Pittman did offer to cooperate with Bankers, simply requesting that Bankers pay their fair share of the cost of the investigation, which Bankers would never agree to do.
Pittman, therefore, had no alternative but to conduct its own investigation, and defend itself, when Travelers and Bankers persistently demurred. Under these facts and circumstances, we cannot hold that Pittman refused to cooperate.
*300 5Cabirac and Liberty Mutual's Liability To Pittman
In the subcontract between Cabirac and Pittman, Cabirac agreed not only to hold harmless and indemnify Pittman, but also to defend Pittman against any and all claims in connection with Cabirac's work, and to reimburse Pittman for all expenses that might be incurred, including attorney's fees.
Liberty Mutual's policy, in effect, not only insures Cabirac against liability to others, but also Pittman "without reference to negligence," to-wit:
"Scope of The Assumed Liability. `To indemnify and save harmless any indemnitee (Pittman) with respect to liability imposed upon said indemnitee (Pittman) by law, but only to the extent that such liability arises in connection with the operations of the Named Insured (Cabirac) * * * under the Named Insured's contract with the Indemnitee (Pittman) without reference to negligence.'" (Names in parentheses and underscoring added.)
Cabirac's subcontract with Pittman obligates it as follows:
"* * * [to] defend any and all suits (Hospital District's suit) that may be brought against the Contractor (Pittman) on account of any such accidents; * * * make good to and reimburse the Contractor (Pittman) for any expenditures that said Contractor may make by reason of such accidents, including court costs and counsel fees." (Names in parentheses added.)
Liberty Mutual's comprehensive policy expressly covered products hazards and completed operations, just as did the Travelers and Bankers policies.
The origin and nature of this litigation establish that the explosion is clearly within the protective scope of Cabirac's blanket "indemnity and hold harmless agreement" and Liberty Mutual's policy; and that Pittman, as the general contractor, is entitled to the benefits of these agreements.
Liberty Mutual and Cabirac rely on Buford v. Sewerage & Water Board of New Orleans, La.App., 175 So. 110, in which a workman sued the Sewerage & Water Board for injuries he alleged were sustained solely due to the negligence of the Board, which was unsuccessful in its attempt to call the contractor and its liability insurer in warranty on a provision of a contract between the Board and the contractor whereby the contractor agreed to protect the Board from liability for damages sustained "by or from" the contractor, the court holding that there was no coverage for accidents due not to the contractor's negligence but to the negligence of the Board. There are two important distinguishing features between the Buford case and the instant case: (1) In Buford only the Sewerage & Water Board's negligence was alleged; in Case No. 5623 it was not only alleged that Pittman was primarily negligent but that it was vicariously liable for the negligence of Cabirac. (2) In the Buford case there was no agreement on the part of the insurer comparable to Liberty Mutual's endorsement agreeing to protect Pittman "without reference to negligence."
The contention that the trial court's holding in the suit "Louis Henry Cabirac v. Delta Gas, Inc., et al.," No. 5658, awarding judgment to the plaintiff against Delta Gas, Inc. and its insurers, precludes Pittman's action against Cabirac and Liberty Mutual, is untenable.
This holding is not res adjudicata of the issues between Pittman, Cabirac and Liberty Mutual since any rights, if any, Plaintiff had against his employer and Pittman, as the general contractor, were exclusively under the Louisiana Workmen's Compensation Act (LSA-R.S. 23:1021 et seq.; particularly, LSA-R.S. 23:1061 and 1062) *301 where negligence or contributory negligence is no issue.
The failure of Cabirac and Liberty Mutual to defend and protect Pittman was arbitrary and without probable cause, subjecting Liberty Mutual to the penalties imposed by LSA-R.S. 22:658; just as Travelers and Bankers are subject thereto, as Pittman's liability insurers.
A compromise does not prejudice the right of the "indemnitee" to institute an action against the "indemnitor;" and, an "indemnitee" is not required to exhaust all legal remedies before paying the claim for which he later seeks to be indemnified.
Cabirac and Liberty Mutual rely on Winford v. Bullock, 210 La. 301, 26 So.2d 822 (1946). In United States Casualty Co. v. Butler, La.App., 151 So.2d 136, 141, this Court in commenting on the above citation, said:
"Therefore, we interpret the foregoing case to mean that a claimant for indemnification of a compromised claim must allege and prove that the compromise was fair and represented no more than the indemnitor would have been required to pay as a result of a final judgment. This interpretation is in harmony with both the jurisprudence and with the result reached in the Brannan case."
See also Seal v. Lionel F. Favret Co., 238 La. 60, 113 So.2d 468; Thomas W. Hooley & Sons v. Zurich Gen. Acc. & L. Ins. Co., 235 La. 289, 103 So.2d 449, 67 A.L.R.2d 1078; S. R. Zagst & Co. v. Southern Surety Co., 148 La. 328, 86 So. 828; and Bertrand v. Ducote, La.App., 128 So.2d 809.
By their actions the insurers abandoned their duty to control the defense and settlement of the original suit, leaving Pittman's attorneys no alternative but to continue on behalf of Pittman; and are subject to the penalties and attorneys' fees set forth in LSA-R.S. 22:658.
Pittman is entitled to recover from all third-party defendant-insurers, jointly and in solido, the sum of $96,072.31 made up as follows:

1. $62,500.00 Compromise Settlement
2. 7,500.00 Statutory 12% Penalty
3. 15,625.00 Attorney's fees of 25% of
 Item (1)
4. 10,447.31 Experts fees

No special allowance should be made for Pittman's attorneys as against the insurers for services, on a per diem basis, for accompanying the experts during their 50-day investigation to discover the cause of the explosion and fire (for which a charge of $150.00 per day was made but reduced to $100.00 per day at the request of Pittman), nor for preparing suit, ample allowance for which is included in the 25% attorney's fees in the judgment herein. Compensation for settlement made by insured and award for attorney's fees should be reasonable. See Thomas W. Hooley v. Zurich Gen. Acc. & L. Ins. Co., 235 La. 289, 103 So.2d 449, 453-454, 67 A.L.R.2d 1078.
Accordingly, the judgment of the district court is reversed in part, amended in part, and judgment now rendered in favor of Pittman Construction Company, as third-party Plaintiff, and against Travelers Insurance Company, Bankers Fire and Marine Insurance Company, and Liberty Mutual Insurance Company, jointly and in solido, in the full sum of $96,072.31, with interest at 5% per annum from date of judicial demand until paid, together with all costs in both courts.
Judgment reversed in part, amended in part, and rendered.

On Application for Rehearing
PER CURIAM.
In its application for rehearing, Liberty Mutual correctly contends the quantum should be prorated among the Defendant insurers, but incorrectly calculates the *302 percentage of its liability, if any, to be only one-ninth, since Pittman was insured by Lloyds of London for $50,000. The only references to such a policy were two witnesses' testimony that they believed Pittman had an excess policy with Lloyds. There is no documentary or other corroborating evidence to this effect, nor was Lloyds made a party to this suit.
The only policies in the record are those of Travelers, Bankers and Liberty Mutual, all of which contain an "Other Insurance" clause which has been judicially interpreted to the effect that each co-insurer is responsible only for its pro rata share of the damages which its policy limit bears to the total liability of all co-insurers. Bardwell v. England Transportation Co., La.App., 169 So.2d 537; Spurlock v. Boyce-Harvey Machinery, Inc., La.App., 90 So.2d 417.
As the respective policy limits are: Travelers, $50,000; Bankers, $50,000; Liberty Mutual, $25,000, a rehearing on this issue is not necessary; hence, the judgment is amended solely and only to fix Travelers' liability at two-fifths; Bankers', at two-fifths; and Liberty Mutual's, at one-fifth.
Rehearing refused.