MILLER, Judge.
Plaintiff was awarded total and permanent workmen’s compensation .benefits together with penalties and attorney’s fees. Defendant, his employer’s insurer, appealed only the award of penalties and attorney’s fees. Plaintiff answered the appeal seeking an increase in the award of attorney’s fees.
Counsel for defendant contends that it was not arbitrary in stopping compensation payments to plaintiff since it acted after receiving a letter dated November 7, 1968, from Dr. Edward W. Phillips, an orthopedic specialist who had treated plaintiff from March 22, 1968 through November 4, 1968. Dr. Phillips treated plaintiff as a referral from Dr. H. J. Sabatier, the original treating physician, of Jennings. Dr. Phillips wrote on November 7th:
“Previous correspondence on this patient was dated May 16, 1968. Since that time the patient has been seen at monthly intervals and examinations of his back have been made. During the interim he has been encouraged to increase his activities. He has been given analgesics to control back pain. The most recent examination was made on 11-4-68. He complained of back pain. He complained of inability to move about without more back pain. He realizes that he is having nerve difficulty and requires medication for this.
“The clinical examination on 11-4-68 was confined to the back and lower extremities. There was a decrease in motion of the low back. The neurological examination revealed active reflexes at the knees and ankles with a strong extensor hallucis muscle. There is decreased sensation throughout the entire right lower extremity. The patient complained of rather intense pain in his back upon elevating the legs to 45° both in the flexed and extended positions. Leg measurements revealed approximately equal thigh circumferences and calf circumferences.
“Opinion: As related in previous correspondence, the patient has x-ray evidence of a spondylolysis. In the past 6 months there has been no evidence of nerve root compression. Most recent examinations have indicated that the patient’s disability may rest with more *608 in his mental attitude toward the injury than to the injury itself. Like so many of these cases, he has become depressed and apparently cannot overcome the situation. The physical examination failed to indicate any reason for his continued disability. His back has reached a state where he should be able to return to his previous work. In view of the preexisting spondylolysis, I am sure he is having some difficulty, but not to the extent which would require constant oral analgesics, etc. From my most recent examination, I would say that the patient is capable of returning to his previous work, with respect to the strength of his back. However, his attitude is such that I doubt that anything I can do that will return him to his previous work.”
In his October 15th report, Dr. Phillips had reported that he had been seeing plaintiff at monthly intervals and “to me it was becoming more evident on my examination that the patient was in an anxiety state in which his nerves were contributing more to- his disability than his back. I did not feel that any stronger treatment was necessary for him other than what we were doing at that time. We were in hopes that by increasing his activities and wearing his brace he would be able to return to some gainful work.” Tr. 259. Also Tr. 261.
Dr Phillips’ examination of November 4th disclosed that plaintiff was complaining of back pain and was unable to get about without considerable back pain. Dr. Phillips “felt on that examination he did realize that he was having an anxiety situation develop and I believe was taking medicine from Dr. Sabatier for that. The clinical examination on that day showed a decrease in motion of the low back.” Tr. 262. However, the neurological examination was within normal limits.
In explaining his November 7th report Dr. Phillips stated that he knew that plaintiff could not go back to work in November of 1968. But he thought that “his back wasn’t the thing that was keeping him from working. * * * He’s just gotten to where he was worrying about it so much, and the hurting and such as that, that he wasn’t doing anything. So what I was hoping to convey * * * in this letter was the fact that I did need some help if we were going to get Lee hack to work. And — But I didn’t think that the back was the main thing, not at that time.” (Emphasis added.) Tr. 268, 269.
It was established that the November 7th report was discussed with defendant’s representative prior to the termination of compensation payments. Tr. 269, 272, 273. Dr. Harold J. Sabatier, the original treating physician, testified that he first hospitalized plaintiff because of his severe pain, muscle spasm and numbness down the right thigh; that he suspected a ruptured in-tervetrebral disc and transferred plaintiff to the care of Drs. Campbell and Phillips. In April of 1968 he considered plaintiff no longer under his care and sent a final report to the company. However, in July of 1968, plaintiff attempted suicide and from that time through April of 1969, Dr. Sabatier treated plaintiff by manipulating anti-depressants and tranquilizers (together with muscle relaxants) in an effort to rehabilitate him. Dr. Sabatier reported these difficulties to Dr. Phillips (Tr. 110, 257) and was of the opinion that plaintiff’s depression was related to the accident. Tr. 113, 119. Dr. Phillips agreed that plaintiff’s nerves contributed to plaintiff’s disability, and essentially agreed that this condition was related to the back condition. Tr. 267, 268.
The medical evidence established that plaintiff had a first degree spondylolis-thesis of L-5 on the first sacral segment (approximately a 15 degree forward slipping). Dr. Phillips was óf the opinion that a spinal fusion was not indicated and that conservative treatment was sufficient. Tr. 258. However, he agreed that plaintiff could be considered for a spinal fusion. Tr. 271.
*609 Dr. J. Robert Rivet, neurosurgeon of Lafayette, made a myelographic study and found it to be negative. He was of the opinion that the treatment for spondylolis-thesis “if it is symptomatic is spinal fusion” (Tr. 75, 80) but referred this question to the orthopedic surgeons.
Dr. William Louis Meuleman, orthopedic surgeon of Lafayette, testified as a witness for plaintiff and was of the opinion that a spinal fusion should be performed.
Defendant argues that plaintiff did not allege nor seek to prove that plaintiff sustained a traumatic neurosis, and that the only basis for disability known to defendant after November 7, 1968 was that plaintiff had “become depressed and apparently cannot overcome the situation. * * * his attitude is such that I doubt that anything I can do will return him to his previous work.”
We are impressed by this argument and the authorities cited by defendant (Eaves v. Louisiana Cypress Lumber Company, 253 La. 741, 219 So.2d 771 [1969]; O’Neal v. French Unique Laundry and Cleaners, 149 So.2d 431, La.App.3d Cir. 1963). But we fail to find manifest error in the trial court’s finding that the termination of compensation benefits was arbitrary and unreasonable. Seal v. Lionel F. Favrot Company, 238 La. 60, 70, 113 So.2d 468 (1959).
The report on which the termination was based was explained by the Doctor to defendant’s representative prior to the termination of compensation benefits. Tr. 269, 272, 273. The Doctor made it clear that plaintiff was not able to return to work. He simply concluded that he could not himself, as an orthopedic surgeon, help plaintiff any further. Tr. 271-279.
Taking into consideration the other medical testimony which shows this man to be disabled as a result of the accident, the insurer terminated compensation payments at its own risk, when they concluded that he was cured on the basis of the sug-gestión that the disabled employee who was presenting serious complaints of pain was disabled because of his depression and his attitude, rather than his back condition. The optimism expressed in the report was explained in conference with representatives of defendant prior to the termination of payments.
Every report, save the one in question, but including other reports received from the same physician, indicated disability caused by the work accident. The report in question does not negative this, but instead indicates that the residual disability was due to plaintiff’s depression rather than to the actual trauma. The report did not negative that the depression was related to the accident, and the author of the report (at trial) thought that it was related.
Plaintiff appellee has not supported his request for an increase in the award of attorney’s fees from $2,500 to $3,500. We find no error in the award.
The judgment of the trial court is affirmed. All costs of this appeal are to be paid by defendant-appellant.
Affirmed.
SAVOY, J., dissents, being of the opinion that attorney fees and penalties should not be awarded.