LANDRY, Judge.
Defendants-appellants, Stanley Anderson and his insurer, the Travelers Insurance Company, take this appeal from the judgment of the trial court awarding Anderson’s employee, Willie Hills, workmen’s compensation benefits for total permanent disability in the sum of $35.00 weekly for 400 weeks, commencing October 6, 1964, *553 subject to a credit for one hundred thirteen weeks paid, with legal interest from due date of each payment, until paid. Plaintiff was also awarded attorney’s fees in the sum of $2,000.00, and penalties of 12% on his entire claim on the trial court’s finding that Travelers arbitrarily and capriciously ceased compensation payments.
Appellants maintain the trial court erred in concluding that plaintiff is totally and permanently disabled, and also erred in awarding plaintiff penalties and attorney’s fees on the ground that payments were arbitrarily and capriciously terminated. Alternatively, defendants urge that the trial court incorrectly assessed penalties against the total compensation due. We affirm the judgment awarding plaintiff compensation and attorney’s fees. We amend the judgment awarding penalties.
Plaintiff-appellee, in his brief, asks for an increase in attorney’s fees. We note, however, that plaintiff has neither appealed nor answered defendants’ appeal. Under the circumstances, we cannot consider plaintiff’s request for additional attorney’s fees. No relief can be granted to one complaining of a lower court judgment who has neither appealed nor answered appellant’s appeal. LSA-C.C.P. art. 2133.
Plaintiff, a 40 year old construction laborer, was injured October 6, 1964, while performing cement finishing work for defendant, Anderson. The accident occurred while plaintiff and a fellow worker were stacking cap forms. Plaintiff sustained a back injury when his co-worker dropped his end of a cap form which the two were carrying. Plaintiff worked the remainder of that day, but reported to a hospital that night, and was informed that he had sustained a slipped disc. He continued to work for approximately two weeks and was then hospitalized because of back pain. Plaintiff remained hospitalized approximately 10 days and since that time has been seen by numerous medical experts.
In essence, plaintiff testified that he suffers greatly from low back pain and pain in his left leg. He is unable to do heavy manual labor. At times his condition is such that he cannot stoop or bend to put on his shoes, and often requires the assistance of his wife in dressing. Plaintiff concedes that on one occasion, he did some carpentry work on his sister’s home for two or three hours. He also admits that in December, 1966, he worked for several hours one day for the owner of a restaurant doing such work as buffing floors, assisting in putting up Christmas decorations, and assisting in moving some dog cages. The following day he worked for this same party doing painting for about 4 hours. Plaintiff further stated that he has tried on occasions to do light work, but his back hurts when he bends over. He also stated that at time of trial, he was still taking medication for pain and was still visiting Dr. A. J. Feder for weekly treatment.
Dr. Moss M. Bannerman, Orthopedist, hospitalized plaintiff on November 10, 1966, subsequent to an examination made pursuant to referral by Dr. R. R. Rose. Dr. Bannerman found acute tenderness in the lumbosacral region and tenderness and tightness in both legs. Plaintiff’s condition was diagnosed as lumbosacral strain. Plaintiff was discharged November 19, 1964, in a back brace and was advised to take heat treatments at home. Thereafter, Dr. Bannerman saw plaintiff at three or four week intervals during which plaintiff constantly complained of considerable back pain. In March, 196S, plaintiff reported that he had reinjured his back. On April 2, 1965, plaintiff was considerably improved, but by May 15, he was much worse. On May 18, 1965, Dr. Bannerman recommended rehospitalization. Dr. Ban-nerman last saw plaintiff on May 18, 1965, at which time he diagnosed plaintiff’s condition as lumbosacral strain with a possible ruptured disc. X-rays proved negative as to fractures. Dr. Bannerman considered plaintiff totally and permanently disabled as of May 18, 1965.
*554 Dr. G. C. Battalora, Jr., orthopedic surgeon, examined plaintiff on July 21, 1965, at which time plaintiff complained of pain in the back and left leg. Dr. Battalora noted a list of the spine and spasm in the paravertebral musculature with the lumbo-sacral joint as the situs of discomfort. Extension and bilateral bending were found to be markedly limited and painful for plaintiff. Straight leg raising to 80° on the right side was found possible with accompanying complaints of low back pain. Straight leg raising to 60° on the left side was observed with complaints of back and sciatic type pain. Dr. Battalora also noted questionable weakness of the extensor halluces longus to the left great toe. Diminished sensation of the left lower extremity was also found. Dr. Battalora noted that plaintiff may have suffered a previous fracture in the area of the acetabulum of the pelvis. Such possible previous fracture might explain the slight atrophy of plaintiff’s right leg, but would not explain the other noted objective and subjective symptoms. Dr. Battalora considered his findings indicative of a fourth lumbar disc herniation and recommended a myelogram to confirm this diagnosis. He was of the opinion that plaintiff’s condition precluded plaintiff’s employment.
Plaintiff was seen by Dr. Ellis F. Muther, neuropsychiatrist, on July 12, 1967, at the request of the Disability Determinations Vocational Rehabilitation Department. Plaintiff compained of back and leg pain and dragged his left leg when walking. Spasm and tenderness of the sacrospinalis muscles bilaterally was observed. Plaintiff would not attempt any meaningful movement of his back. Percussion over the spinous process produced pain responses in the lumbar region. Straight leg raising was limited to 30° bilaterally. Dr. Muther stated a myelogram was required for positive diagnosis, but none was made. Dr. Muther also stated his “impression” was that plaintiff had a history suggestive of a possible ruptured intervertebral disc. He believed plaintiff was suffering from low back strain and was of the opinion that plaintiff could not engage in heavy manual work.
Dr. A. J. Feder, M.D., had treated plaintiff for other illnesses prior to subject accident. Between September 15, 1965, and August 30, 1966, Dr. Feder saw plaintiff 92 times for injuries related to the accident in question. Plaintiff initially complained of low back and leg pain and exhibited marked low back spasms and limitation of motion in all directions. Plaintiff walked with a list. Dr. Feder diagnosed plaintiff’s condition as a herniated intervertebral disc with nerve root compression. Physiotherapy in the form of ultrasonic therapy and diathermy were administered, and plaintiff was given Darvon for pain and parafon forte as a muscle relaxant. Plaintiff was discharged August 30, 1966, because Dr. Feder felt that conservative treatment would produce no further improvement. Dr. Feder was of the opinion that surgery was indicated, and so advised plaintiff, but plaintiff refused surgery on the ground that he knew someone who had such an operation and became worse. Dr. Feder encouraged plaintiff to see a neurosurgeon and to submit to surgery. Plaintiff was seen by Dr. Feder on five occasions subsequent to August 30, 1966, namely, September 18, 1966, November 20, 1966, February, 1967, June 18, 1967, and May, 1968. On each occasion plaintiff suffered spasms of his back muscles. Dr. Feder first put plaintiff in a back brace, but discontinued this treatment because it was producing no beneficial results and might lead to a weakening of plaintiff’s back muscles. Dr. Feder recommended exercise and advised plaintiff to attempt light work. Dr. Feder was of the opinion that plaintiff might work two or three days, but would probably have to rest ten days thereafter. In Dr. Feder’s opinion, plaintiff was not a malingerer. He was also of the opinion that plaintiff was totally disabled, that plaintiff was in need of surgery, and that as of May 18, 1968, plaintiff’s condition was static.
*555 Dr. Dean H. Echols, M.D., examined plaintiff on January 20, 1966. Based on the history received and his own examination, Dr. Echols suspected that plaintiff might have a ruptured disc, but was not convinced that plaintiff required surgery. At this time, Dr. Echols felt that plaintiff might recover from the back pain and intermittent sciatica from which plaintiff was apparently suffering.
On May 30, 1966, plaintiff was again examined by Dr. Echols who found plaintiff walking with a limp. Dr. Echols also observed a list of the lumbar spine to the left and marked rotoscoliosis or waviness of the spine. This examination caused Dr. Echols to strongly suspect that plaintiff had a rupture of the fourth lumbar inter-vertebral disc which was causing plaintiff’s low back pain and intermittent sciatica.
Dr. Echols saw plaintiff for the last time on December 5, 1966, at which time plaintiff had no limp but walked with awkwardness and waving of the arms. Plaintiff showed tightness of the low back muscles. At this time, Dr. Echols reported he was “less enthusiastic” about his former diagnosis of a ruptured disc because most patients recover from such a malady in a year or two, but plaintiff had shown no improvement, and also because plaintiff displayed a paucity of objective signs and symptoms. Clumsiness of movement and groaning exhibited by plaintiff on this visit indicated the possibility of emotional disturbance. Dr. Echols noted that plaintiff was physically unable to resume work as a construction laborer, and also that disc herniation symptoms tend to be intermittent.
Defendant insurer had plaintiff placed under surveillance which disclosed that on June 30, 1966, plaintiff engaged in carpentry work on the porch of a house between the hours of 10:35 A.M. and 2:00 P.M. Plaintiff, working alone, sawed lumber and nailed boards. On December 15, 1966, plaintiff was engaged by the Manager of Cave Tangi, a restaurant and lounge. Surveillance revealed that for approximately one hour and fifteen minutes, plaintiff was seen operating a floor buffing machine, assisting in carrying a heavy object which appeared to be the bed of a pick up truck, and lifting what seemed to be chicken coops.
Defendants maintain that plaintiff is not totally and permanently disabled because none of the treating or examining physicians were convinced that plaintiff sustained a herniated disc. Defendants also contend that plaintiff’s activities in working as a carpenter and doing manual labor at the Cave Tangi belied his alleged disability. Defendants further urge that plaintiff’s disability is due to a previous pelvic injury. Defendants justify discontinuance of compensation payments on the results of their surveillance efforts and Dr. Echols’ report based on his final examination of plaintiff on December 5, 1966, in which Dr. Echols stated he was less enthusiastic about his prior diagnosis of a ruptured disc. However, upon testifying at the trial, Dr. Echols stated unequivocally that as of December 5, 1966, plaintiff was physically unable to resume employment as a construction laborer.
It suffices to state that in this instance plaintiff was found unfit to resume his former employment upon final examination by each of the medical authorities who treated or examined plaintiff. While Dr. Battalora found X-ray evidence of a former pelvic injury, he did not even suggest that said injury was in any way related to plaintiff’s complaints of back and leg pain. The testimony of Drs. Echols and Feder establishes that disc herniation produces intermittent symptoms. Dr. Feder recommended that plaintiff attempt light work, but conceded that plaintiff could not work more than two or three days at a time. That plaintiff was detected doing the work shown does not establish plaintiff’s physical fitness as a construction laborer.
It is settled law that a common laborer need not be completely incapacitated *556 to be deemed totally and permanently disabled within the meaning of the term as employed in our compensation statute. If a laborer is injured to the extent he cannot compete with able bodied workers in the general labor market, he is entitled to benefits for total permanent disability. Stephney v. Robertson, La.App., 219 So.2d 9; Jarrell v. Maryland Casualty Company, La.App., 200 So.2d 332. We find, therefore, that plaintiff is totally and permanently disabled.
Appellants’ reliance upon the result of their surveillance of plaintiff, and Dr. Echols’ report of December, 1966, was unfounded under the circumstances. In view of plaintiff’s past medical history which was available to appellants and considering Dr. Echols’ testimony that he considered plaintiff disabled as of December 5, 1966, it was incumbent upon defendant to undertake further investigation before terminating payments. We agree with the trial court that cessation of benefits was arbitrary and capricious in this instance.
Defendants correctly contend, however, that the trial court erroneously assessed penalties on all remaining unpaid compensation. LSA-R.S. 22:658 provides:
“All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount . of the loss, payable to the insured, or to any of said employees * *
In numerous instances the pertinent statute has been interpreted to mean that the penalty is due only on weekly compensation more than sixty days due when judgment is rendered, or which might become overdue more than sixty days in the future. Seal v. Lionel Favret Co., 238 La. 60, 113 So.2d 468; Humphreys v. Marquette Casualty Co., 235 La. 355, 103 So.2d 895; McClelland v. Liberty Mutual Insurance Company, La.App., 180 So.2d 19.
It is ordered, adjudged and decreed that the judgment of the lower court be and the same is hereby amended to award plaintiff statutory penalties of 12% on all compensation payments due more than 60 days when judgment was rendered in the trial court, and on all payments which have been or might become overdue more that sixty days since said judgment.
It is further ordered, adjudged and decreed that in all other respects the judgment is affirmed, costs to be paid by defendants, Stanley Anderson and The Travelers Insurance Company.
Amended and affirmed.