HOOD, Judge.
This is a workmen’s compensation suit instituted by John Wilturner against his employer, Southern Bell Telephone and Telegraph Company. The trial court rendered judgment awarding" plaintiff weekly compensation benefits for a period not to exceed 400 weeks, and defendant has appealed. No answer has been filed to the appeal.
The issues presented are factual. They are: (1) Whether an accident occurred as alleged by plaintiff; and (2) if such an accident did occur, whether plaintiff has had or now has any disability as a result of injuries sustained in that accident.
The accident is alleged to have occurred on December 5, 1963. At that time plaintiff, a twenty-four year old colored man, was employed by defendant to work as a janitor in defendant’s office building in Crowley, Louisiana. He contends that on that date he fell from a stepladder in the lobby of defendant’s building, and that as a result of that fall he sustained injuries to his back and to his head. He maintains that because of these injuries he has been totally disabled from performing manual labor since that time.
Plaintiff had worked for defendant for more than two years immediately prior to the date of the alleged accident. He was fired in October, 1963, primarily because some of his creditors had instituted legal proceedings against him and had garnisheed his salary. He was re-hired a few days later, but defendant’s plant manager informed him at that time that he would be discharged again if he failed to pay his bills or failed to stay out of trouble. Shortly after being re-hired, plaintiff told one of his fellow employees, Rose Wildridge, “that the company had turned him off and he probably would do something to get back on the company.”
About a month after plaintiff had been reemployed, he got off work one day by misrepresenting facts to his employer. Shortly thereafter, the defendant conducted an investigation of plaintiff’s conduct, which investigation included the interviewing of some friends and acquaintances of plaintiff, and following that investigation defendant’s plant manager decided to discharge plaintiff permanently from his employment. He planned to inform plaintiff of that decision on the morning of December 5, 1963, which was the date of the alleged accident, but he had not done so prior to the time the fall allegedly occurred. Although plaintiff did not know of the plan to discharge him on that date, he was informed prior to that time that his employer was making an investigation of his conduct.
Plaintiff reported to work a few minutes before 7:00 a. m. on the date of the alleged accident. He states that he noticed that a light bulb was burned out in the lobby of defendant’s building, and he proceeded to get a stepladder to replace the defective bulb. The evidence establishes that he did obtain the ladder, that he set it up in the lobby of the building and that he had climbed up several steps on the ladder and was engaged in changing the bulb just a few minutes before the fall allegedly oc *607 curred. Plaintiff testified that while he was on the ladder two telephone operators opened a door leading into the lobby, that the door bumped against the ladder, knocking him off balance and causing him to fall several feet to the floor. No one else was in the lobby of the building at that time, so there were no eyewitnesses to the alleged accident.
Mrs. Pearlie LeBlanc, a telephone operator for defendant, testified that she started to enter the lobby from the stairway hall at about 7:10 that morning, but that she felt some resistance to her efforts to open the door. She then exerted a bit more pressure and the door opened. When it did, she saw plaintiff lying on the floor, with the ladder laying beside him, and plaintiff had the appearance of being in severe pain. She states that she did not see plaintiff fall, that she did not hear a noise or sound of any kind from the time she first arrived at the door until she saw plaintiff on the floor, that she is confident that she would have heard a sound of some kind if plaintiff had actually fallen, and that she did not feel or hear the door strike anything at any time. Her testimony was confirmed by that of Miss Genevieve Arceneaux, another telephone operator, who was with her at the time.
The ladder which plaintiff used was heavy, weighing about 80 pounds, it was six feet high and it was unusually narrow for its height. The trial judge visited the scene of the accident, and he observed that the floor of the lobby of defendant’s building was “highly waxed and quite slippery.” The trial judge also noted that, “In an experiment, the ladder was placed near the door and the door opened into the ladder with a person standing on it. This caused the ladder to slide and the person to be thrown somewhat off balance.”
Defendant contends that plaintiff did not sustain a fall as he alleges, but that the accident was “faked” pursuant to the plan which he had disclosed to Rose Wildridge before that time. It is argued that Wilturner simply placed himself and the ladder in such a position on the floor that it would appear that he had fallen when someone entered the door to the lobby.
Defendant maintains that the fact that plaintiff was about to be fired, that he previously had made a threat to get revenge against him' employer, that there were no eyewitnesses to the accident, that the two telephone operators who were at the door when the fall allegedly occurred did not hear a sound at that time, and that there were some inconsistencies in plaintiff’s testimony, all show that plaintiff did not sustain a fall as he contends. Plaintiff points out, on the other hand, that he had not been informed and did not know that the plant manager intended to fire him that day, that the testimony of other witnesses establishes that he was mounted on the ladder changing the bulb a very few minutes' before the accident occurred, and that the door which struck the ladder and caused the fall was a heavy fireproof door and that may have prevented the two telephone operators, who were attempting to enter the lobby, from hearing the fall.
Applicable here is the general principle that in a workmen’s compensation case the testimony of the plaintiff alone may be sufficient to establish the occurrence of an accident, provided that there is nothing to discredit his testimony as to how it occurred, and provided further that his statements are supported by the surrounding circumstances. Guilbeaux v. Trinity Universal insurance Company, La.App. 3 Cir., 134 So.2d 717; and Gisevius v. Jackson Brewing Company, et al, La.App. 4 Cir., 152 So.2d 231 (cert. denied).
In the instant suit we think plaintiff’s account of how the accident occurred is supported by the surrounding circumstances, since it was established that he was on the ladder engaged in changing the light bulb a very short time before the fall allegedly occurred, that the ladder was unusually narrow for its height, that the floor was slippery, and that an experiment conducted *608 in the presence of the trial judge demonstrated that the opening of the that door against the same ladder could cause a person on the ladder to lose his balance.
The only fact which we think deserves consideration as one tending to discredit plaintiff’s testimony is that the two telephone operators did not hear the fall, although they were at the door when it allegedly occurred. Plaintiff points out that the door is a heavy, steel fireproof door which is controlled by a pneumatic type spring, and he suggests that the heavy construction of the door probably muffled the sound and prevented the telephone operators from hearing the fall. The trial judge examined the door when he visited the scene of the accident, and he apparently accepted plaintiff’s explanation as to why the other witnesses did not hear the fall. We cannot say that he erred in doing so. The evidence does not convince us, as it apparently has convinced defendant, that the two other witnesses, Leeward Junot and John Gay, were in as good a position to hear the fall as were the telephone operators. And we agree with the trial judge that the discrepancies between plaintiff’s testimony at the trial and his statements in earlier depositions were of such an insignificant nature as not to constitute a material contradiction •of his testimony.
The trial judge’s findings of fact, particularly those involving the credibility •of witnesses testifying before him, are entitled to great weight on appeal, and his •conclusions of facts will not be disturbed unless found to be clearly erroneous. Hudson v. Arceneaux, et al. La.App. 3 Cir., 169 So.2d 731 (writ refused).
In the instant suit the trial judge accepted plaintiff’s testimony as to how the accident occurred, and he concluded “that Wilturner did fall from the ladder as he alleges, and that he did sustain an accident ■within the course of his employment.” We •cannot say that the trial judge was clearly •erroneous in arriving at that conclusion, and thus we affirm his finding that an accident did occur as alleged by plaintiff.
We turn now to the question of whether plaintiff sustained a disabling injury as a result of that accident, and if so, what was or is the nature, extent and duration of his disability.
Plaintiff testified that when he fell from the ladder his back and his head struck the floor first, and that the ladder fell on his stomach. He says he suffered pain in his back and had a terrible headache for several days after the accident, and that since that time the lower part of his back hurts “at certain times,” and his right leg pains him and gets numb if he stands up too long or walks too far. He also states that he gets dizzy headaches occasionally, and that he has had seven black-out spells during the ten or eleven month period which elapsed between the time the accident occurred and the date of the trial. Each such spell, he says, lasts fifteen or twenty minutes and following each black-out he has to lie down for about two hours. Plaintiff has not been employed regularly, and he has performed no heavy manual labor and has done no lifting since the accident occurred.
Plaintiff was treated by Dr. J. W. Faulk, Jr., a general practitioner, for a period of about nine days immediately following the accident, during all of which time plaintiff was hospitalized. Dr. Faulk, however, was unable to find any objective signs of injury or any basis for plaintiff’s complaints, and he discharged Wilturner on December 14, 1963, as being able to return to work.
Plaintiff consulted Dr. J. Boring Montgomery, another general practitioner, on December 17, 1963, and has been treated by Dr. Montgomery since that time. This treating physician concluded that as a result of the accident plaintiff sustained ruptured intervertebral discs at two different levels in the low back area, and that in addition thereto he possibly sustained a ruptured disc in the cervical area of the spine. He feels that plaintiff is totally disabled as a result *609 of these injuries and that he is not able to return to work.
Wilturner also was examined by Dr. Homer D. Kirgis and by Dr. Joseph M. Edelman, both of whom are neurosurgeons, and by Dr. James Gilly and by Dr. William Louis Meuleman, who are orthopedic surgeons. The testimony of these specialists establishes that plaintiff has a grade one spondylolisthesis with anterior subluxation of L-5 on S-l of about three millimeters. The preponderance of the evidence is to the effect that this defect in plaintiff’s spine is congenital and that it existed before the accident occurred.
The amount of the subluxation or displacement of the vertebra in plaintiff’s back is regarded as minimal, and there is some disagreement among the doctors as to whether it is sufficient to involve or to irritate the nerve roots. Dr. Gilly did not even note the spondylolisthesis, and Dr. Edelman is firm in his opinion that there had been no aggravation of it. Both Dr. Gilly and Dr. Edelman concluded that plaintiff did not have a ruptured disc, that plaintiff sustained no brain damage, and that he has no disability as a result of the accident. Dr. Meuleman also is of the opinion that the spondylolisthesis was not made symptomatic by the trauma, but he noted that there was a marked narrowing of the intervertebral space between L-5 and S-l in plaintiff’s spine, and he concedes that this may indicate that plaintiff did sustain some injury to the intervertebral disc as a result of the accident, although not necessarily a rupture of the disc. He also states that plaintiff’s complaints are consistent with the low back pathology shown by x-rays of plaintiff’s back.
Dr. Kirgis concluded that as a result of the accident plaintiff sustained a mild cerebral concussion and an injury to the lumbo-sacral intervertebral disc. He felt that plaintiff did not have a ruptured disc, but that he did have a “bulging of the disc to the degree that with the disalignment he has some irritation to the nerve root adjacent to it.” At the time he last examined plaintiff, on May 19, 1964, he felt that Wilturner had symptoms from both the concussion and from the disc injury, and that he was disabled from performing manual labor at that time, but that he should recover from all of his injuries and be able to return to work within a period of six months from and after that last examination. He states that it is possible that plaintiff will not recover from the back injury within six months, and that if he fails to do so a spinal fusion may be necessary to relieve him of his symptoms.
The lay evidence, consisting principally of the testimony of two of plaintiff’s friends and that of an attorney who employed plaintiff occasionally to do odd jobs in and around his home, is to the effect that plaintiff has had at least two black-out spells since the date of the accident, and also that since that time he has performed only light work, such as house cleaning, and that he has done that on only three or four occasions since the accident, working from five to seven days each time.
 The trial judge, after noting the conflict in the medical testimony and then considering the lay evidence, concluded that plaintiff had been disabled from performing manual labor continuously since the date of the accident, that he was still disabled at the time of the trial, and that the duration of his disability could not be determined or fixed. Judgment accordingly was rendered in favor of plaintiff, awarding him compensation benefits “beginning December 5, 1963, for a period not to exceed 400 weeks.” In view of the conflict in the medical testimony, we think it was proper for the trial judge to consider the lay evidence. After reviewing all of the facts and the medical testimony which was presented, we have concluded that the evidence adequately supports the conclusions reached by the trial court, and we thus find no error in his determination that plaintiff was still disabled at the time of the trial..
Since the evidence indicates that plaintiff may have recovered from his inju-
*610 ries within six months after he was last examined by Dr. Kirgis, we think the defendant is entitled to have the case re-opened immediately for review under the provisions of LSA-R.S. 23:1331, even though the six month period specified in that section of the Revised Statutes may not have elapsed.
For the reasons herein set out, therefore, the judgment appealed from is affirmed. The right is specifically granted to defendant, however, to have the case re-opened immediately for review, for the limited purposes provided in LSA-R.S. 23 .T331, even though the six months delay provided in that section of the Revised Statutes may not have elapsed. All costs of this appeal are assessed to defendant-appellant.
Affirmed.
On Application for Rehearing
En Banc. Rehearing denied.