McBRIDE, Judge.
The question posed by this appeal is whether the workmen’s compensation claimant met with an accident on November 12, 1965, while in the course and scope of his employment with Glazer Steel Corporation. The district judge resolved that factual issue against plaintiff, who appeals.
Plaintiff, a colored man, 32 years of age, was in the employ of the above named defendant. On July 10, 1964, he sustained a back injury when a co-worker dropped one end of a steel bar plaintiff was helping to carry, throwing the whole weight thereof on plaintiff. He made no claim for compensation, but was treated for a few days by the doctors of the defendant insurer, Huston, Roy, Faust and Ewin, with whom Dr. Pierre Espenan is associated, and was discharged’ by the doctors as being cured.
Plaintiff alleges that on November 12, 1965, he sustained another accident which occurred while descending a vertical ladder from an overhead crane to the ground; his testimony is that he missed his footing which necessitated his grabbing the rungs of the ladder to keep from falling, in which maneuver he suffered a new back injury or aggravated the old one. There were no witnesses and to prove the accident plaintiff relies solely on his own testimony. The defendant denies such an accident.
Plaintiff testified that the incident on the ladder caused his back to hurt immediately and that he then went to the tool area and changed clothes. Despite the fact plaintiff says his back hurt and although he saw his foreman, he admitted that he did not inform the foreman about the accident. Plaintiff’s explanation is that he did not think he was seriously hurt.
The accident is supposed to have occurred on a Friday. Plaintiff states he reported for work the following Monday at about 6:45 a. m., and waited until about 7:10 a. m., but as no other workmen reported he left the job site and went home. He states he then called the foreman on the telephone and “ * * * told him I would have to go the doctor, that I got my back hurt that Friday.”
*615 After the conversation with the foreman he, of his own accord, went to the office of the insurer’s above named doctors complaining of back pain. Dr. Espenan’s examination revealed á lumbosacral sprain with objective evidence. Dr. Espenan appeared as a witness in the case and stated that plaintiff was “ * * * complaining of his back still bothering him from a year and three months earlier,” meaning, of course, as a result of the injuries sustained in July, 1964.
Dr. Espenan then called for and examined plaintiff’s office record which showed the treatments for the July, 1964, injury. Dr. Espenan being confronted with this record interrogated plaintiff as to the cause of the condition of plaintiff’s back. Dr. Espenan testified:
“A. This is what he said, that he back was still bothering him.
“Q. I see.
A. And even though he had been discharged as asymptomatic and ' he denied a new injury.
“Q. What do you mean, he denied a new injury?
A. He did not say that he was rein-jured. We questioned him extensively about this.
“Q. What words did he use?
A. He said he did not have a reinjury to his back, that it was still hurting him from previously to this time.
“Q. Was he talking about the same area of his back?
A. Yes, he was.
“Q. Who questioned him at that time, Doctor ?
A. Well, I questioned him.
“Q. Was your nurse there also?
A. My nurse was there, too.
“Q. Okay, go ahead.
A. This was very important, Judge, because we are treating him for the Liberty Mutual Insurance Company, and if they or we feel that it’s not a compensable disorder, if he hurts himself off of that job, of course they’re not going to be responsible for our bill, and we would make recommendations for him to seek treatment from his private physician, so we were very specific in our history whether he had reinjured himself or if this was a continuation of his old injury. We felt it was not a continuation of his old injury, because when he was discharged after three days of treatment, one year and three months earlier, we felt sure that he wouldn’t continue to have difficulty.”
At any rate, Dr. Espenan did treat plaintiff that day and advised him to “ * * * get some rest”. The next day, Tuesday, plaintiff reported to his place of employment at 7:00 a. m., as usual, and worked part of the day. He states he told the foreman:
“ * * * that the doctor said I can’t do no kind of heavy work or nothing, and I asked him would it be all right if I just do light work, and he said yes”.
Dr. Espenan also rendered treatment to plaintiff on Tuesday, the next day.
On Wednesday when plaintiff called at Dr. Espenan’s office the attendant there sent plaintiff with a note to see McNeely, an adjuster for defendant insurer, as Dr. Espenan had taken the position that he could not render treatment to plaintiff for an old injury, as more than a year had elapsed, unless the insurer would authorize it.
Upon seeing McNeely plaintiff again did not report an accident on November 12, 1965. McNeely, like Dr. Espenan, was under the impression he was seeking treatment for the old 1964 injury. The result was *616 that McNeely declined plaintiff’s request for further treatment and Dr. Espenan was so advised. Plaintiff then sought the services of his private physician.
The next contact plaintiff had with anyone connected with Glazer Steel Corporation was on November 26, 1965, when he called at the employer’s office for a check due him for wages he had earned since the accident. The person in charge of dispensing the checks to the workmen would not give plaintiff his check until he signed a statement, reading as follows:
“November 26
“I did not advise Glazer Steel Corporation or the doctor I reported to due to back injury that I had missed a rung on the ladder on Friday, November 12th, 1965 at about 5:15 P.M. I went to a private doctor. I do not know his name, but he’s located on South Dorgenois near Thalia. I went to him because the insurance company told me I could not expect to be treated for an injury over a year old”.
In summation, no notice was given to anyone connected with the employer regarding a 1965 accident until plaintiff’s attorney communicated with the Glazer Steel Corporation after the insurance adjuster declined plaintiff’s request for further treatment from Dr. Espenan. This is indeed strange for plaintiff saw the foreman as he left the employer’s premises shortly after the accident, he spoke to the foreman by telephone before going to Dr. Espenan, he saw Dr. Espenan who questioned him closely about the injury, he called upon and spoke with the insurance adjuster for twenty minutes, after seeing Dr. Espenan he asked the foreman to permit him to do only light work, and never once did he even intimate that he had met with an accident on the job on November 12, 1965.
The failure to announce to anyone that he had met with an accident cannot be attributed to plaintiff’s ignorance. The testimony shows that he has had two previous experiences with workmen’s compensation matters. When he was treated for the July, 1964, injury he furnished the doctors and the adjuster all the .necessary details connected with the accident. Subsequent to the 1964 episode plaintiff also, in another accident, sustained an injury to his head and compromised his compensation claim for $250. On this occasion he also furnished full information regarding the accident. It is hard to understand why, if he had been hurt on the job in November, 1965, he did not tell the foreman, the doctor, the insurance adjuster or anyone else about the accident.
We are aware that the workmen’s compensation law has been said to be paternal in nature and that it is the clear intention of the Legislature in connection with claims arising under the statute that a liberal allowance be made, and that doubts be resolved, to a reasonable extent, in favor of the compensation claimant, but we are unwilling to stretch liberality so far as to allow this plaintiff to recover. The law is clear that a plaintiff in a workmen’s compensation case bears the burden of. proving his case with reasonable certainty by a preponderance of the evidence. Plaintiff attempts to prove the accident by his own testimony. The testimony of a plaintiff alone may in some cases be sufficient to establish the occurrence of the accident, provided that there is nothing to discredit his testimony. Wilturner v. Southern Bell Telephone & Tel. Co., La.App., 177 So.2d 605. In the instant case the plaintiff failed to report an accident although he had every opportunity to do so and undoubtedly he knew that such a report was necessary and, in view of these circumstances, the trial judge was justified in concluding that plaintiff did not meet with an accident on the date in question.
This is not a case where a workman reports the wrong date of the accident. We again point out that, even under extensive questioning by Dr. Espenan, plaintiff main *617 tained that his injuries stemmed from the former accident.
For these reasons the judgment appealed from is affirmed.
Affirmed.