BEER, Judge.
As stated by the trial court in its written reasons:
“Plaintiff [Charles Walker, the appel-lee] was injured on the job in the course and scope of his employment in September, 1973. He was originally sent to Drs. Houston, Roy & Faust, who diagnosed a back sprain. With continued complaints of pain, he was referred to Dr. Robert L. Applebaum, a neuro-sur-geon. On October 29, 1973, he was operated on and a herniated L-5, S-l disc was removed. After discharge from the hospital, he was seen several times by Dr. Applebaum, the last visit being February 11, 1974 at which time the doctor said he could return to work.”
As further stated by the trial court:
“The plaintiff felt he could not return to his job and consulted Dr. Kenneth Adatto, an orthopedic surgeon about two —three weeks after discharge by Dr. Applebaum. The orthopedist found the plaintiff to have had some atrophy, straight-leg raising test was positive and produced pain at 75 degrees, muscle spasm was present and the plaintiff’s back was unstable.”
Appellee (hereafter, Walker) filed suit in Civil District Court for the Parish of Orleans on September 12, 1974, against appellants Gaines P. Wilson & Son, Inc., and Liberty Mutual Insurance Company (hereafter, collectively, Employer) seeking $65 per week for 500 weeks plus seven percent interest on each past due installment, medical payments in an additional amount not to exceed $12,500, twelve percent penalties on all amounts past due and owing and reasonable attorney’s fees (which, in the body of the petition, were stated to be in the amount of $3,000) plus all costs, expert fees, etc.
Employer denied liability. The case was tried on two dates: May 5, 1975 and May 29, 1975. Judgment was rendered on June 18, 1975. It read as follows:
“IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff Charles Walker and against the defendants Gaines P. Wilson & Son, Inc. and Liber *919 ty Mutual Insurance Company, in solido, for Workmen’s compensation at the rate of $65.00 per week and continuing for the duration of plaintiff’s disability, not to exceed 500 weeks less compensation paid up to February 11, 1974 with interest at the legal rate on each past due weekly installment until paid. All Medical expenses incurred by plaintiff to date up to $12,500.00 maximum are to be paid by defendants (including the cost of an orthopedic corset and the medical bill of Dr. Kenneth Adatto)
“Further under the provisions of R.S. 22:658 Liberty Mutual Insurance Company is to pay to plaintiff an additional 12% of each installment payment past due for more than 60 days, as a penalty for arbitrary and capricious refusal to continue payment of compensation in this case, and for the further sum of $5,000.00 as an attorney’s fee.
“The expert fees of Dr. Robert L. Ap-plebaum and Dr. Kenneth Adatto are fixed at $150.00 each and taxed as cost. All costs are to be paid by defendants.”
A motion for new trial was filed on June 26, 1975, rejected the same day, and a petition for suspensive appeal was filed July 11, 1975.
THE STATE OF THE RECORD
Unhappily we are obliged to deal with a situation which arose in the course of this litigation that is difficult for us to treat. Both the transcript of the repartee between counsel and the court and the court’s written reasons for judgment indicate that just below the surface of the record there may have been some conflict between the court and the Employer. We are not disposed to make large of this, realizing full well that the able trial judge and diligent counsel for' the litigants were all on the “firing line” and very much involved in fulfilling their particular responsibilities to the best of their ability. Nevertheless, the existence of some antagonism has been alleged in written brief and oral argument and appears, on the record, to have existed to some degree.
We do not conclude that ultimate determinations made by the trial court should be rejected out-of-hand because of this. We have been obliged to temporize some aspects of the trial court’s judgment which may have been partly attributable to the situation that we have been obliged to describe. But, whatever error into which the trial court may have fallen is not, we are sure, attributable to any motivation other than a vigorous desire to support the proper administration of justice.
Parenthetically, we note that existent pretrial practices very often make excessive demands on the trial judge. Though he is required to ultimately be the impartial trier of the facts, the relentless demands made upon him also require that he become very familiar with the vigorous contentions of the litigants prior to trial. It is almost impossible in these kinds of situations to obviate the possibility that the trial judge will form pretrial opinions which he must, nevertheless, erase from his judicial mind when the trial itself begins. We know how hard this is to do and appreciate the difficult position in which the trial court is placed. Nevertheless, the trial court must, once trial has commenced, deal with the case on the basis of the trial record, difficult though it may be to “block out” preexistent, pretrial views.
PENALTIES AND ATTORNEY’S FEES
Walker alleges that:
“Notwithstanding the fact that the defendants have been fully apprised of petitioner’s disability by medical reports from treating physicians and records from hospitals, said defendant has arbitrarily, capriciously and without probable cause failed and refused to pay to peti *920 tioner continuous compensation benefits, notwithstanding amicable demand.”
and further alleges:
That because of the defendant’s arbitrary and capricious action in failing to pay continuous workman’s compensation benefits to petitioner as above set forth, petitioner is entitled to recover from said defendants twelve per cent (12%) penalties on all amounts past due and owing, plus reasonable attorney’s fees.”
These allegations are denied by Employer.
During the trial, and at the request of Walker’s counsel, Dr. Applebaum was qualified by the court as an expert in the field of neurosurgery. He testified that he performed a lumbar laminectomy on Walker on October 29, 1973 and removed a herniated disc at the L5-S1 interspace on the left. No fusion was necessary. Walker was discharged from the hospital in November and followed as an outpatient until February 11, 1974 when he was advised by Dr. Applebaum that he could return to work. Specifically, Dr. Applebaum “considered him capable of doing any type of heavy manual labor without pain or discomfort, which he had previously been able to do to his injury without pain or discomfort.”
Dr. Applebaum reported these findings to the Employer who, “based on the medical information received from Dr. Apple-baum, the treating neurosurgeon” discontinued weekly disability benefit payments. The Employer had previously paid all of the medical and hospital expenses incurred as a result of Walker’s operation and had, of course, been paying maximum weekly disability benefits.
Walker was first examined by Dr. Kenneth Adatto in March, 1974. Dr. Adatto was of the opinion that Walker was not able to return to his former employment and reported same to Walker’s attorney who then made this information available to the Employer by, thereafter, forwarding a copy of Dr. Adatto’s report. This was the first medical Opinion of any physician ■ — treating or otherwise — indicating that Walker was not able to return to his former job.
The Employer, relying on Dr. Apple-baum’s report (and taking into account that Dr. Applebaum was the physician directly involved in the initial treatment of Walker) did not change its opinion regarding the discontinuation of weekly disability payments.
Subsequently, further reports from Dr. Adatto to Walker’s attorney were forwarded by Walker’s attorney to the Employer, but did not precipitate any change in the Employer’s position.
The record indicates that no other medical opinion was sought by either litigant. Accordingly, on one hand the Employer’s physician, who was a recognized expert in the field of neurosurgery, was of the opinion that Walker was fully able to return to his former employment and on the other hand plaintiff’s physician who was recognized as an expert in the field of orthopedic surgery was of the opinion that he was not. The record does not support the trial court’s observations that:
“Liberty Mutual, on February 12, 1974 completely cut off this injured man’s compensation payments and medical assistance. It is unbelievable that this thoroughly experienced compensation insurer, knowing that this man was then just three months following his disc operation, was no longer entitled to any compensation or treatment. The neurosurgeon returning this man to full manual labor on February 11, 1974 was indeed wrong and the insurer knew it. Even if the insurer were justified in relying on that neuro-surgeon’s report, it also knew that the injured man was being returned to work with a permanent disability which itself called for further compensation. Nowhere, at any time in the jurisprudence of this state, has a workmens compensation carrier ‘gotten by’ by paying four months’ compensation *921 to an injured man who has to their certain knowledge had a disc removed from his spine.
“The Court has absolutely no difficulty in concluding from the evidence that denial of further compensation benefits to this plaintiff by Liberty Mutual was deliberate, arbitrary and capricious. The Court applies the statutory penalties for such conduct.”
On the record, we do not find that Employer’s discontinuance of weekly disability payments fits the jurisprudential definition of arbitrary and capricious action in the circumstances here existent.
The penalty provision of the workmen’s compensation act is stricti juris, and penalties are denied were there exists a substantial issue as to whether the disabled workman is entitled to benefits. Guillory v. Travelers Ins. Co., 294 So.2d 215 (La. 1974); R.S. 22:658. Whether the defendant-insurer was arbitrary and capricious in discontinuing benefits depends primarily upon the facts existing and known to the employer or insurer at the time payment zvas stopped. Griffin v. Kelly-Springfield Tire Co., 316 So.2d 529 (La.App. 2nd Cir. 1975). Thus, when termination of disability benefit payments is based upon competent medical evidence indicating release of the claimant for resumption of his former duties, the action is not arbitrary and capricious. Under such circumstances, the insurer or employer is .entitled to a judicial determination of an employee’s claim without incurring penalties. Levine v. Liberty Mutual Ins. Co., 305 So.2d 665 (La.App. 3rd Cir. 1974); Brooks v. Acme Carton Corp., 312 So.2d 924 (La.App. 4th Cir., 1975), writs denied, 318 So.2d 48 (La.1975).
EXTENT OF DISABILITY
The only expert medical testimony presented at trial of this matter was that of Doctors Robert L. Applebaum and Kenneth Adatto. As previously noted, Dr. Ap-plebaum was of the opinion that Walker was fully capable of resuming his prior duties and discharged him on February 11, 1974. Thus, any expert medical testimony supportive of the trial court’s finding of permanent total disability is necessarily restricted to that of Dr. Adatto.
Dr. Adatto last examined Walker in September 1974, over eight months prior to the trial. At that time he found Walker to be disabled. At trial of this matter in May 1975, he testified that he was not able to render an expert opinion as to whether Walker was permanently precluded from doing the same work that he was doing at the time of his injury. He described his practice of handling cases similar to this one, pointing out that he restricts his patients from stressful labor for the first four to six months following the operation. Thereafter, he recommends (as he did here) a return to light duty before attempted resumption of regular heavy duty. It was his opinion that unless this procedure was followed it would be difficult to determine if Walker could, thereafter, return to heavy duty. Specifically, he states:
“You never know on these whether they will be able to go back to heavy duty or not, but I think a trial at light duty is best at first and then go back to full labor.”
Since Dr. Adatto had not examined Walker in the eight month interval between his last examination and the day that he testified at the trial, the record contains no current medical testimony indicative of Walker’s alleged disability as of May 1975. The light duty recommended by Dr. Adatto was neither attempted nor accomplished and there is no way for us to determine on this record whether Walker would have been able to resume his former job if Dr. Adatto’s rehabilitative program had been followed.
At any rate, Dr. Adatto’s testimony, even if accepted without being tern- *922 pered in any way by that of Dr. Apple-baum, does not support a positive medical conclusion that Walker is permanently and totally disabled. His testimony includes a clear indication that Walker should have returned to light duty and, thereafter, worked up to heavy duty. Dr. Adatto was asked if he would absolutely say that Walker could not return to regular duty. He answered in the negative stating:
“No, I think that would be wrong for me to say that, too. Again, I have a standard way of approaching problems; it’s the way I like to if I can. Sometimes you can’t, and that is the way the world is. You can’t always have things the way you want them.”
Aware of the mandate which directs us to accord great weight to the trial court’s findings, we will not upset the basic determination made by the trial court which completely disregarded Dr. Apple-baum’s testimony and completely accepted the testimony of Dr. Adatto although our view of the weight to be accorded the two divergent opinions does not coincide with his. But even accepting Dr. Adatto’s testimony and rejecting that of Dr. Apple-baum the maximum award that can be made on this record is for temporary total disability. Dr. Adatto’s testimony is, in our view, persuasive to the effect that Walker may very well be able to return to his former job. In fact, he outlines a regimen which calculates to effectuate just such a result and gives clear indication that the hoped for result may be susceptible to accomplishment within a reasonable span of time.
CONCLUSION AND DECREE
Walker should, through the period of his temporary total disability, have a right to come back into court to adduce evidence indicative that the disability has become permanent. Fontenot v. Myers, 93 So.2d 245 (La.App.1st Cir. 1957). In the same spirit, since the evidence indicates an equally serious possibility that Walker’s alleged disability may have terminated since his last medical examination, the Employer shall have the right to reopen this matter without delay. See Wilturner v. Southern Bell Tel. & Tel Co., 177 So.2d 605 (La. App.3rd Cir. 1965). Also note LSA-R.S. 23:1331.
Accordingly, the judgment of the Civil District Court for the Parish of Orleans is amended and recast to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff Charles Walker and against defendants Gaines P. Wilson & Son, Inc., and Liberty Mutual Insurance Company in solido for workmen’s compensation at the rate of $65 per week and continuing for the duration of plaintiff’s disability not to exceed 300 weeks less compensation previously paid with interest at the legal rate on each past due weekly installment until paid. All medical expenses incurred by plaintiff to date up to $12,500 maximum are to be paid by defendants (including the cost of an orthopedic corset and the medical bill of Dr. Kenneth Adat-to.)
At any time from the date of this judgment onward, each party to this litigation shall have the right to reopen these proceedings for the purpose of determining the then present status of Charles Walker’s disability (or lack thereof). Furthermore, Charles Walker shall have the right at any time prior to the expiration of the 300th weekly disability payment as provided for in this judgment, to reopen the matter in order to adduce further evidence indicative of permanent disability.
Plaintiff’s claim for penalties and attorney’s fees under the provisions of LSA-R. S. 22:658 is denied.
The expert fees of Dr. Robert L. Apple-baum and Dr. Kenneth Adatto are fixed at *923 $150 each and taxed as costs. All costs to be paid by defendants.
As thus amended and recast, the judgment is affirmed.

AMENDED, RECAST AND AFFIRMED.

MORIAL, J., concurs.