340 So.2d 985 (1976)
Charles WALKER, Plaintiff-Appellee-Relator,
v.
GAINES P. WILSON & SON, INC. and Liberty Mutual Insurance Company, Defendants-Appellants-Respondents.
No. 58028.
Supreme Court of Louisiana.
November 8, 1976.
Rehearing Denied December 10, 1976.
Clark A. Richard, Edward R. Drury, New Orleans, for plaintiff-applicant.
*986 John C. Combe, Jr., David F. Edwards, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for defendants-respondents.
TATE, Justice.
The plaintiff sues his employer and its insurer for compensation benefits. The trial court awarded compensation during permanent total disability, La.R.S. 23:1221(2) (1968), and also assessed the defendant insurer with penalties and attorney's fees for the non-payment of compensation undoubtedly due, La.R.S. 22:658.
The court of appeal: (1) reduced the award to compensation during temporary total disability, La.R.S. 23:1221(1) (1968); and (2) disallowed the penalties and attorney's fees. 328 So.2d 917 (La.App.4th Cir. 1976). We granted certiorari, 332 So.2d 866 (La.1976), to review these two determinations.
The plaintiff suffered a back injury while at work as a laborer. His duties included heavy lifting. As a result of the work-injury, back surgery (a laminectomy) was performed on October 29, 1973, to remove a herniated disc, some six weeks after the accident. The operating neurosurgeon discharged the plaintiff as able to return to work on February 12, 1974, some three months after the disc surgery.
The issue is whether, despite this initial prognosis of an unusually swift recovery (see below), the workman's disability continued, as subsequent medical examinations and treatment by another specialist indicated; and, if so, whether the insurer was justified in refusing to resume compensation payments for disability solely in reliance upon this initial optimistic report of the operating surgeon, without at least verifying from him whether his initial prognosis would remain unchanged despite the remanifestation of objective symptoms of a painful back.

(1)
The operating physician discharged the claimant as able to return to work on February 11. The latter still complained of a painful residual in the low back. In discharging him, the physician gave him a prescription for a pain-reliever, and also told him to return if he had any difficulty in the future.
The claimant testified that, since the back pain persisted, he consulted an orthopedic surgeon during the following month, March. He was examined and treated by this orthopedist on numerous occasions through September. (He testified that he did not return to the neurosurgeon because he interpreted that specialist's final conversation as indicating "the only thing he could give me was some pain pills", and because he and the doctor "weren't getting along too well".)
On the occasion of his initial examination, the orthopedist found the claimant still disabled from performing heavy work, as a residual of the back-injury and operation. On the basis of his physical examination, he found positive, objective findings (muscle spasms, atrophy, and leg-raising tests), which corroborated the claimant's complaints of continued disabling back pain.
The doctor continued his patient on a course of conservative treatment, prescribing muscle relaxants and analgesics. He thought the patient was improving, but in April fitted him with a corset for backprotection. By May 27, the doctor thought his patient should return to light duty. By report of June 6, the doctor so informed the defendant insurer, pointing out that, since the symptoms were residing, a trial period of four to six weeks at light duty should be considered.
The claimant attempted to perform some light mopping at home, but his painful symptoms immediately recurred. He returned to the orthopedist on June 10, and this physician then diagnosed, based on the complaints and objective symptoms, the cause of the disabling painful residual as a back instability residual to the surgery. To rectify this condition, further surgery by way of fusion is required.
By July 11, as we interpret this orthopedist's testimony, he had concluded that the *987 claimant was permanently disabled from the heavy lifting duties of the work in which injured: An ability to return to such heavy lifting might possibly result from major surgery by way of fusion surgery in the back. Otherwise, he could only perform light work, if he wore his corset, providing it did not involve repetitive stooping or lifting of over fifty pounds.[1]
On his final examination of September 25, the orthopedist confirmed the diagnosis of permanent back instability and the prognosis above-stated. The physician on this last date told the patient not to return unless further complications occurred.

(2)
An injured employee is deemed totally and permanently disabled "whenever he is unable to perform work of the same or similar description to that which he performed before the accident." Futrell v. Hartford Accident & Indemnity Company, 276 So.2d 271, 273 (La.1973). A common laborer is "considered as totally and permanently disabled within the meaning of the compensation statute if the injury has substantially decreased his ability to compete with ablebodied workers in the flexible general labor market." Ball v. American Marine Corporation, 245 La. 515, 159 So.2d 138, 139 (1964). The present claimant, because of his residual painful back, is totally disabled from performing the heavy duties of a laborer, the occupation in which injured. See also Mitchell v. Litwin Corp., 304 So.2d 725 (La.App.4th Cir. 1974).
A judgment for total permanent disability should be awarded when the claimant is shown to be totally disabled at the time of trial and the duration of such disability is indefinite or the evidence does not clearly indicate its duration. Montgomery v. Delta Concrete Products Co. Inc., 290 So.2d 769 (La.App.1st Cir. 1974); Blazier v. Georgia-Pacific Corporation, 301 So.2d 701 (La.App.3d Cir. 1974); Deville v. Travelers Insurance Company, 176 So.2d 824 (La.App. 3d Cir. 1965); Harris v. Argonaut Insurance Company, 142 So.2d 501 (La.App.2d Cir. 1962); Louisiana compensation law has accepted this as established principle since at least Connell v. Gilliland Oil Company, 2 La.App. 435 (2d Cir. 1925). Malone, Louisiana Workmen's Compensation Law Section 280 (1951).
The trial court was correct in awarding compensation during total permanent disability, as required by the established jurisprudence. Under this jurisprudence, the court of appeal was in error in reducing the award to compensation during temporary total compensation, where the workman is shown to be totally disabled at the trial, even if, as the court of appeal felt, there was a possibility that the disability might lessen over the course of time.

(3)
We likewise find no error in the trial court's award of penalties for the non-payment of compensation benefits undoubtedly due.
*988 Weekly disability compensation was terminated on February 12, 1974, following receipt of the operating neurosurgeon's report to the effect that the claimant could return to work. The neurosurgeon estimated a 5-10% Partial, permanent anatomical (non-functional) disability as a residual of the operation.
At this point, of course, the insurer was entitled to terminate compensation payments in reliance upon this physician's report. However, if subsequent to an initial optimistic report, an insurer receives medical information indisputably showing disability at a subsequent date, the insurer may not blindly rely upon the early report and solely on its basis avoid penalties for arbitrary non-payment of compensation benefits indisputably due a disabled workman. Seal v. Lionel F. Favret Co., 238 La. 60, 113 So.2d 468 (1959); Stockstill v. Bituminous Casualty Corp., 144 So.2d 918 (La. App.4th Cir. 1962), certiorari denied; Gloston v. Coal Operators Cas. Co., 85 So.2d 100 (La.App.1st Cir. 1955), certiorari denied.
The claims manager for the insurer did not deny receiving the orthopedist's reports of continuing diagnosis of disability, nor the statements rendered for treatment of the disabled claimant. Essentially, the claims manager rested on his contention that he was not obliged to pay disability compensation because on February 11 the operating neurosurgeon had indicated that the claimant could return to work.
In judging the good faith of this reliance, we like the trial court take into consideration: the failure of this agent of the insured to contact the neurosurgeon for his advice on the claim of continued disability or to send the claimant back for further examination, after receiving the orthopedist's reports diagnosing continued disability; [2] that he considered the orthopedist qualified and reliable; that he admitted he did not discount the orthopedist's reports completely, but instead on their basis attempted to compromise the claim for $5,000 on the basis of at least partial, permanent disability; that he realized back instability is an orthopedic problem and not a neurosurgical problem; that he refused to tender payment of medical treatment for this residual of the accident for no reason shown; and that in his entire experience he had never satisfied compensation liability for the residual of a herniated disc for as little as the twenty-two weeks' compensation here paid.[3]
Even if (as the claims manager contended) the orthopedist's undisputed reports showed only partial disability at the time following initial discharge, an insurer may avoid penalties upon the ultimate award for total disability only if it unconditionally tenders benefits for the partial disability shown. Fruge v. Pacific Employers Insurance Co., 226 La. 530, 76 So.2d 719 (1954).
Or even if the insurer felt that the reports indicated that the employee could return to light work and (perhaps) eventually recover his ability to perform the heavy work in which injured, an employee under the law is nevertheless regarded as totally disabled if at the time he is then unable to perform the heavy type of work he was doing before the accident. Holmes v. New Amsterdam Casualty Company, 128 So.2d 269 (La.App.1st Cir. 1961), certiorari denied;
*989 Cummings v. Albert, 86 So.2d 727 (La.App.1st Cir. 1956); Brown v. International Paper Co., 58 So.2d 557 (La.App.2d Cir. 1952). (As these decisions indicate, the courts will not under such circumstances speculate as to when (if ever) the claimant might recover and be able to perform the duties of the employment in which injured.)
We thus cannot find any abuse of discretion or error of the district court in its imposition of penalties and attorney's fees upon the defendant insurer because of its arbitrary refusal to resume compensation payments upon receiving medical evidence indisputably showing continued disability of the injured claimant, without at least having the employee re-examined or otherwise finding a reasonable basis to question the validity of such apparently reliable medical evaluation.

Decree
Accordingly, for the reasons stated, we set aside the judgment of the court of appeal, and we reinstate and affirm the judgment of the district court in all respects, including its award of compensation during total permanent disability and its imposition of penalties and attorney's fees for the arbitrary nonpayment of compensation benefits undoubtedly due.
COURT OF APPEAL JUDGMENT SET ASIDE; DISTRICT COURT JUDGMENT REINSTATED.
NOTES
[1] See the orthopedist's testimony at Tr. 106-08:

"July 11th. At that time he was doing well in the corset and this, to me, confirms the thing that, as long as his back is stable, where he wears a corset and is not stooping, he does well. And I felt he may be a good candidate for a fusion, but I tell the person in all honesty, if you can avoid doing heavy lifting, you don't want to do heavy lifting and you wear the corset, you don't have to have the operation. If you want to do heavy lifting, the only way is to do the operation. It's a big operation; 80 percent chance it will work, 20 percent it won't * * *.
"September 25th was the last examination I saw him. He had some numbness in the posterior calf. I didn't see anything to upset me about that. I went along with instability and irritation of the nerve root. I didn't feel he had ruptured another disc. As long as he was comfortable in his corset, not repetitive in stooping or lifting objects over 50 pounds, he was okay; and he should only return as needed at that point.
"Q. When you last saw him, did you think he was a candidate to be a laborer in occupation?
"A. No.
"Q. And why is this?
"A. Again, because everytime he would stress his back he would get into trouble. And as long as he would protect his back he would do fine.
[2] If the claims manager had contacted the neurosurgeon, he would have discovered that the neurosurgeon had in fact found some residual indicating functional impairment on the date of his last examination, Tr. 68-69, 75-76; that the specialist had not ruled out further complication, having requested the patient to return to him if further difficulty arose, Tr. 58; and that this doctor was familiar with "back instability" (diagnosed by the orthopedist in his reports), and that he would defer to the opinion of an orthopedist on it as concerning a disability within the realm of orthopedics and more properly diagnosed and treated by an orthopedist, Tr. 71.
[3] The orthopedist's testimony indicates that usually, following surgery for a disc, a patient may not return even to light work following stress for from four to six months, and then progress on to heavy work only if the back accommodates to it. Here, the claimant was initially discharged as completely able to perform heavy work some three months and two weeks following surgery.