363 So.2d 969 (1978)
Wesley J. HEBERT, Plaintiff and Appellee,
v.
LOFFLAND BROTHERS and Travelers Insurance Company, Defendants and Appellants.
No. 6680.
Court of Appeal of Louisiana, Third Circuit.
October 13, 1978.
Caffery, Duhe & Davis, Jerry A. Oubre, New Iberia, for defendants and appellants.
Landry, Watkins, Cousin & Bonin, Jacob D. Landry, New Iberia, for plaintiff and appellee.
Before CULPEPPER, DOMENGEAUX, and CUTRER, JJ.
*970 DOMENGEAUX, Judge.
This is a workmen's compensation case in which the trial judge awarded plaintiff benefits for total and permanent disability, plus penalties and attorney's fees. Defendants are Loffland Brothers, the employer, and Travelers Insurance Company, the insurer. They appeal only that portion of the judgment which awards penalties and attorney's fees.
The issues are:
(1) Whether plaintiff is entitled to statutory penalties and attorney's fees because of failure to reinstate benefits (La.R.S. 22:658); and
(2) If so, was the award of attorney's fees in the amount of $2,500.00 excessive?
Plaintiff worked as a derrick man on an oil rig. He sustained extensive injuries on January 9, 1974, when he fell some fifteen or twenty feet. These injuries included trauma to the head, which induced unconsciousness, a broken arm, several broken ribs, a fractured scapula, lacerations to the head and arm, and back injuries. All of plaintiff's injuries, except those to the back, ultimately healed. Consequently, the issues involving penalties and attorney's fees revolve around the back injury.
Plaintiff was seen and treated medically from the time of the accident. He returned to work with his employer as a floorhand (roughneck) on July 2, 1974. Although the jobs of derrick man and floorhand are different, both require strenuous activity. At the time of his return to work, his maximum compensation benefits were terminated by Travelers.
After working a few months as a floorhand, plaintiff complained of persistent pain in his back, and, in November 1974, when an opening came up on another rig, plaintiff was assigned the job of a motorman. This is a lighter type work than that which he had been performing.
On May 13, 1975, the rig on which plaintiff was employed was stacked, and plaintiff lost his job. About two weeks subsequent to the layoff, plaintiff was offered a job as a floorhand by his employer, but he refused, stating that he was unable to do this type of work because of pain in his back. Plaintiff instituted this suit on March 15, 1976, and, based on subsequent medical developments, which will be discussed hereinafter, defendant, Travelers, reinstated compensation on July 1, 1976, and paid all arrearages.
Plaintiff was treated by Dr. Ethel Smith from the time of the accident until July 2, 1974, when she certified plaintiff as being able to return to his regular duties. He was seen by Dr. Fred C. Webre, an orthopedic surgeon, on April 24, 1974, primarily for difficulties in the right knee, and the doctor reported generally that there was no particular problem with the knee and that there was no reason to believe that plaintiff would have any type of impairment in that connection. Doctor Webre saw plaintiff again on September 30, 1974, and reported that the lower back showed a transverse of the L-2 vertebrae on the right, which was apparently split in an old injury. The doctor was unsure as to whether this was caused by the injury of January 9, 1974. He did think, however, that plaintiff should continue to work as he had been doing. Doctor Webre saw plaintiff again on November 14, 1974, and plaintiff complained that, although he was continuing his work, he was doing so with difficulty and pain. Doctor Webre thought that the lower back was clear, but recognized that plaintiff appeared to have legitimate difficulties. The doctor also thought that, inasmuch as plaintiff was continuing to work, he should begin wearing a back brace in order to alleviate difficulties experienced on the job. Plaintiff returned to Doctor Webre on December 16, 1974. This was after plaintiff had changed his job to that of motorman and during the time in which plaintiff was wearing the recommended back brace. At that time Doctor Webre suggested that plaintiff continue his employment and try to wean out of the back brace in time. The doctor indicated that there were no specific findings upon which a diagnosis of disc herniation could be made.
*971 On March 17, 1975, a myelogram was performed on plaintiff by Doctor Brendon Miles, a radiologist, at the request of Doctor Webre. This resulted in negative findings. On April 17, 1975, Doctor Webre reported that plaintiff had returned to work after the myelography and thought that there was no need for further orthopedic treatment.
Plaintiff was examined by Dr. Stuart Phillips, an orthopedic surgeon, on June 11, 1975. On July 3, 1975, plaintiff's attorney mailed to defendant Travelers a copy of Doctor Phillips' report, which indicated that plaintiff was unable to return to his prior occupations of either derrickman or motorman and which estimated plaintiff's disability at ten percent. On August 13, 1975, plaintiff's attorney received a letter from defendant Travelers requesting an examination of plaintiff by Dr. H. R. Soboloff, a third orthopedic surgeon. On August 26, 1975, plaintiff's attorney refused an examination by Doctor Soboloff, but suggested a re-examination by Doctor Webre. On September 22, 1975, the appointment for re-examination by Doctor Webre was not kept by plaintiff on advice of his counsel. On November 18,1975, plaintiff's attorney furnished a report by Dr. Richard W. LeBlanc, a fourth orthopedic surgeon, which indicated that plaintiff was unable to participate in heavy manual labor.
As indicated above, plaintiff instituted this suit on March 15, 1976. On May 6, 1976, Doctor Webre re-examined plaintiff pursuant to a Court Order. This report, which was received by Travelers' adjuster in the middle of May, 1976, showed that plaintiff had a disc injury. Doctor Webre, from his examination of plaintiff, and a review of the x-rays and a discogram which had been performed by Doctor LeBlanc, concluded that plaintiff had an abnormality at the lumbo-sacral disc space, and therefore recommended that the lumbo-sacral disc space should be explored and evacuated. Shortly after this report, as previously mentioned, Travelers paid all past due benefits and continued to pay maximum benefits thereafter.
When a workmen's compensation insurer fails to make payments within sixty days after receipt of proof of loss and such failure is found to be arbitrary, capricious, or without probable cause, the insurer is subject to a penalty, in addition to the amount of the loss, of twelve percent damages on the total amount of the loss, together with all reasonable attorney's fees for the prosecution and collection of such loss. La.R.S. 22:658. Thus, the substantial issue presented on this appeal is whether Travelers' failure to resume compensation benefits prior to July 1, 1976, was arbitrary, capricious, or without probable cause.
Appellants place reliance on Doctor Webre's report of April, 1975, which indicated that plaintiff was able to work, and the fact that plaintiff failed to keep his appointment for re-examination with Doctor Webre on September 22, 1975. It is now settled that an employer may not terminate the payment of compensation benefits to a disabled employee solely because the employee fails to report for a medical examination arranged by the employer. Green v. Liberty Mutual Insurance Company, 184 So.2d 801 (La.App. 3rd Cir. 1966), and Richardson v. Weitz Company, 202 So.2d 361 (La.App. 1st Cir. 1967).
Generally, the termination of compensation benefits by an insurer, based on competent medical reports or evidence, is not arbitrary, capricious, or without probable cause within the meaning of the compensation statute. However, the existence of conflicting medical reports may not, under all circumstances, justify the nonpayment of benefits, either by discontinuance or failure to reinstate. For example, our Supreme Court in the case of Walker v. Gaines P. Wilson & Son, Inc., 340 So.2d 985 (La.1976), stated:
"[I]f subsequent to an initial optimistic report, an insurer receives medical information indisputably showing disability at a subsequent date, the insurer may not blindly rely upon the early report and solely on its basis avoid penalties for arbitrary non-payment of compensation benefits indisputably due a disabled workman." [Citations omitted] *972 The evidence shows that following plaintiff's refusal to report for re-examination by Doctor Webre, Travelers made no further requests or demands and made no further investigation of the claim until after suit was filed in March of 1976. It is undisputed that in November of 1975, Travelers had in its possession two reports of competent physicians indicating that plaintiff was disabled. The only contrary information which Travelers had at that time was the report of Doctor Webre of April, 1975, some seven months old, which indicated that plaintiff could work. The defendants knew that plaintiff had been wearing a brace for the last six months in which he worked. They should have known that even Doctor Webre must have been concerned about plaintiff's physical condition, inasmuch as he had ordered the myelogram performed on plaintiff in March, 1975. Appellants' reliance on Doctor Webre's report of April, 1975, is unwarranted under the circumstances present in this suit. Of significance in this overall picture is the fact that Doctor Webre, as early as November 14, 1974, recognized that plaintiff appeared to have legitimate back difficulties and recommended that he wear a back support at a time when he was performing the less strenuous work of a motorman. The defendant Travelers should have conducted further medical investigations of plaintiff's condition, particularly after receiving a second report by a qualified orthopedic surgeon showing disability. Only the filing of suit in March of 1976, caused Travelers to take the necessary action in bringing a rule before the District Court to require plaintiff to be re-examined by Doctor Webre.
We feel that the rationale in Walker, supra, applies here, and we consequently conclude that attorney's fees were properly awarded by the District Judge.
Concerning the issue of the excessiveness of attorney's fees, it is well settled that the amount awarded therefor is left largely to the discretion of the trial court. Artigue v. Louisiana Farm Bureau Mutual Insurance Company, 339 So.2d 880 (La.App. 3rd Cir. 1976). We note that the trial judge properly took into consideration the degree of skill and amount of work involved; the number of court appearances; the number of depositions taken; the amount of office work; and the length of time spent in court. Our review of the record indicates that the amount awarded by the trial court as attorney's fees was not unreasonable.
For the reasons assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to appellants.
AFFIRMED.
CULPEPPER, J., dissents and assigns written reasons.
CULPEPPER, Judge, dissenting.
It is my view that both the trial judge and the majority in this Court have erred as a matter of law in applying to the present case the jurisprudential rule that an employer who is paying workmen's compensation benefits may not terminate those payments on the grounds that the employee refuses to submit to an extrajudicial medical examination. The present case does not involve an employer terminating benefits. This case involves an employer's refusal to resume payments. I think this is an important distinction, as will be more fully explained hereinafter.
Although I agree generally with the statement of fact in the majority opinion, I would like to emphasize certain additional facts. In July of 1974, Dr. Ethel Smith, who was the original treating physician, discharged plaintiff with a report that he was able to return to work as a roughneck, the same work which he was performing at the time of the accident. At this time, plaintiff actually did return to work as a roughneck.
After he returned to work, plaintiff complained of pain in his back, so Dr. Smith referred him to Dr. Webre, an orthopedic surgeon. Dr. Webre saw plaintiff several times but never could find any objective symptoms to support plaintiff's subjective complaints. Dr. Webre even ordered a myelogram, which was performed on March 17, 1975 and was negative. So, on April 17, *973 1975, Dr. Webre issued a report to the defendants stating:
"This patient is seen April 17, 1975. He is working and apparently doing well. His neurological examination of the lower extremities is again within normal limits. I would see nothing here for which further orthopedic treatment would be indicated."
On May 13, 1975, the rig on which plaintiff was employed was stacked, and Hebert lost his job. Prior to this time, he had worked steadily since July 2, 1974. About two weeks subsequent to the lay-off, Hebert was offered a job as a floorhand by Loffland, but he refused.
Shortly thereafter, the plaintiff, at the instigation of his attorney, was examined only one time by Dr. Stuart Phillips, an orthopedic surgeon in New Orleans. On July 3, 1975, plaintiff's attorney mailed to Travelers a copy of Dr. Phillips' report, which indicated that the plaintiff was unable to return to his prior occupation.
About two weeks after receipt of Dr. Phillips' report, Travelers requested an examination of the plaintiff by Dr. H. R. Soboloff, a third orthopedic surgeon. The plaintiff's attorney replied on August 26, 1975 that Hebert would not submit to such an examination, but he would agree to another examination by Dr. Webre. Accordingly, Travelers notified the plaintiff an appointment with Dr. Webre had been made for him on September 22, 1975. The plaintiff did not keep this appointment.
On November 18, 1975, plaintiff furnished Travelers with a second report by yet another orthopedic surgeon, Dr. Richard W. LeBlanc. Dr. LeBlanc found the plaintiff ten per cent disabled because of back difficulties.
Plaintiff filed this suit on March 15, 1976. After again requesting that plaintiff be examined by Dr. Webre, and plaintiff again refusing, Travelers obtained a court order forcing the plaintiff to submit to an examination by Dr. Webre, the original orthopedic surgeon. On this examination on May 6, 1976, Dr. Webre found the plaintiff disabled by back injuries. On about July 1, 1976, Travelers reinstated compensation payments, paid back benefits from May 13, 1976 to the present, and paid for all the medical expenses.
LSA-R.S. 22:657 provides that an insurer shall pay all claims within sixty days of "satisfactory proof of loss", or it shall be liable for penalties of twelve per cent of the loss and reasonable attorney's fees, if the failure to pay the claim is deemed to be arbitrary, capricious, or without reasonable cause.
The jurisprudence is clear that the termination of compensation benefits by an insurer based on competent medical reports or evidence is not arbitrary, capricious or unreasonable within the meaning of the statute. The penalty provision is stricti juris and should only be imposed in those instances in which the facts negate probable cause for nonpayment. Crawford v. Al Smith P&H Service, Inc., 352 So.2d 669 (La.1977). In the present case, it is clear the insurer cannot be held for attorney's fees or penalties for the termination of compensation benefits on July 2, 1974, because it based this decision on the plaintiff's return to work and the medical reports of two doctors which stated that Hebert was able to return to his prior occupation.
Whether the insurer's failure to resume compensation payments was arbitrary or capricious is a separate issue. The majority relies on the following quote from Walker v. Gaines P. Wilson & Son, Inc., 340 So.2d 985 (La.1976):
". . .if subsequent to an initial optimistic report, an insurer receives medical information indisputably showing disability at a subsequent date, the insurer may not blindly rely upon the early report and solely on its basis avoid penalties for arbitrary non-payment of compensation benefits indisputably due a disabled workman." (Emphasis supplied)
The facts of Walker are distinguished from the instant case in two respects. First, in Walker, when the plaintiff was discharged and returned to work, the physician specifically stated the patient suffered *974 a five to ten per cent disability and that he could not perform the more strenuous aspects of his prior occupation. In the present case, both Drs. Smith and Webre discharged Hebert without equivocation. Secondly, in Walker, the court specifically points to the insurer's failure to obtain additional medical evidence, the insurer's failure to contact the first doctor, and the short length of time between the accident and the termination of payments. In the instant case, Travelers attempted to arrange two separate medical examinations. When faced with the contradicting medical reports, and the fact that plaintiff had actually performed strenuous labor for approximately ten months after his return to work, the insurer made a good faith attempt to resolve the differences. Travelers did not rely "blindly" or "solely" on the previous medical reports, and therefore did not act unreasonably, arbitrarily or capriciously.
The cases cited by the Supreme Court in Walker are also distinguished from the facts of the present case. In Seal v. Lionel F. Favret Company, 238 La. 60, 113 So.2d 468, as in Walker, the first medical report indicated that the plaintiff might well have future trouble with his back and that the return to work was only a trial. In Stockstill v. Bituminous Casualty Corporation, 144 So.2d 918 (La.App. 4th Cir. 1962), the second medical report showing disability was made by the same doctor who had initially examined the plaintiff and upon whose original finding of no disability the insurer was relying in refusing compensation.
Plaintiff-appellee contends the insurer had no right to refuse the resumption of compensation payments based upon the plaintiff's refusal to submit to the arranged medical examinations. He contends it was the duty of the defendant-insurer to obtain a court order for the medical examination. LSA-R.S. 23:1124 states that an employee's right to compensation is suspended when he refuses to submit to a medical examination arranged by the employer. The circuit courts, including this one, have consistently read this statute in conjunction with LSA-R.S. 23:1123, and have held that before compensation benefits can be terminated, based on an employee's failure to submit to a medical examination, there must be a court determination as to the reasonableness of that examination. Green v. Liberty Mutual Insurance Company, 184 So.2d 801 (La.App. 3rd Cir. 1966); and Richardson v. Weitz Company, 202 So.2d 361 (La.App. 1st Cir. 1967). The trial judge based his decision largely on these cases.
The issue in the instant case, however, deals not with the termination of benefits, but with the insurer's failure to resume the payment of benefits. When an insurer terminates compensation payments, the burden of proof that such action was warranted lies on him. However, when a claimant asks that compensation payments be initiated or resumed, he must furnish the insurer or employer with satisfactory proof of his loss. LSA-R.S. 22:658. In the instant case, the insurer's refusal to resume compensation benefits was not based on the plaintiff's refusal to submit to a medical examination. Instead, the refusal to resume compensation payments was based on the insurer's inability to resolve the conflict between the individual reports furnished by Drs. Smith and Webre and those furnished by Drs. Phillips and LeBlanc. Faced with conflicting medical evidence and the plaintiff's refusal to meet his burden of proof, the insurer had probable cause to refuse the resumption of benefits.
For the reasons assigned, I respectfully dissent.