GUIDRY, Judge.
This is a workmen’s compensation case. Defendant-employer, St. Patrick Hospital of Lake Charles, appeals from the trial court’s judgment which held plaintiff-employee, Arnet Ruth Pradia, to be temporarily totally disabled from a work related accident and thus entitled to workmen’s compensation benefits. Additionally, defendant seeks on appeal reversal of the trial court judgment awarding penalties and attorney’s fees. Plaintiff answered defendant’s appeal seeking an increase in attorney’s fees.
*577 Defendant assigns as error the trial judge’s findings that (1) plaintiff suffered a job related accident and injury; (2) plaintiff is temporarily totally disabled; and, (3) defendant was arbitrary and capricious in terminating plaintiff’s compensation benefits.
We note at the outset that the trial court’s findings we are now asked to review are to a large degree factual. Therefore, if the evidence which was presented to the trial judge, upon his reasonable ..evaluation . of credibility, furnishes a reasonable factual basis for his findings, we cannot disturb such factual findings, unless the record as a whole shows that they are clearly wrong. Canter v. Koehring Co., 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The record shows that plaintiff was injured twice on January 2, 1977 [1], while performing her duties as a bus girl and temporary cook at the St. Patrick Hospital of Lake Charles. First, at 4:30 A.M. when attempting to light a stove, the stove top fell on her right hand. Later, at 10:30 A.M., she was in the process of removing a pan from a steam table when she slipped on the wet floor and fell with her weight on her right hand and wrist. The accident was reported, but plaintiff did not seek medical attention until January 5, 1977, when she went to the emergency room at the hospital complaining of her injured hand and wrist. Plaintiff was told to see her own physician, Dr. Arthur Penton, a general practitioner, who in turn sent her back to the hospital for x-rays and referred her to Dr. Edmund Campbell, an orthopedic surgeon. Although the x-rays were normal, Dr. Campbell found plaintiff’s hand and wrist to be swollen. Plaintiff was put on a regimen of conservative treatment. A short arm cast was applied to her right hand and wrist on January 27, 1977, when a possible fracture of the carpal scaphoid was revealed by x-rays.
Plaintiff was next seen by Dr. Campbell on February 17, 1977, at which time the x-rays were normal and the cast was removed. On February 24, 1977, plaintiff was sent by Dr. Campbell to St. Patrick Hospital for out-patient physical therapy which she received periodically until May 13, 1977. During this time, Dr. Campbell sent a written report to Aetna Casualty Company[2] in which he stated that plaintiff had received a spraining injury to the right wrist, complicated by a psychiatric disorder.[3] At that time, Dr. Campbell was of the opinion that although plaintiff could not do any significant work, such disability was more psychiatric than orthopedic. After subsequent examinations, on June 27, 1977, Dr. Campbell stated in another report that he thought plaintiff could perform her previous work and on July 21, 1977, Dr. Campbell discharged plaintiff from his care. During the entire course of treatment by Dr. Campbell, including the day of discharge, plaintiff’s right hand was swollen and plaintiff complained of pain.
After being discharged by Dr. Campbell, plaintiff went to another orthopedic surgeon, Dr. William G. Akins on August 29, 1977. Dr. Akins diagnosed plaintiff’s injury as a spraining injury of the right hand with reflex sympathetic dystrophy superimposed. At the time of his initial examination, Dr. Akins recommended multiple scalene blocks *578 in order to relieve pain so that plaintiff would be more receptive to the benefits of physical therapy.
At the request of defendant, plaintiff was seen by yet another orthopedist, Dr. Norman P. Morin, on December 16, 1977. Dr. Morin, while of the opinion that plaintiff’s problem with her right hand and arm stemmed from disuse rather than from an actual orthopedic residual, he informed defendant on January 17, 1978, that plaintiff was disabled from returning to her former work.
Plaintiff did not return to work at the hospital after her injury on January 2,1977, and has been unsuccessful at finding other employment which does not aggravate the swelling and pain in her right hand and arm. Plaintiff received workmen’s compensation benefits from January 6,1977 to July 1, 1977, at which time the benefits were terminated.
Defendant initially contends that the trial court erred in finding plaintiff suffered a job related accident on January 2, 1977. In support of this contention defendant argues that this finding of the trial court is based solely on the testimony of plaintiff which is fraught with conflict and inconsistency.
Our review of the record reflects defendant’s contention to be ill founded. Although there were discrepant accounts as to the exact date and manner of plaintiff’s fall, Joseph Weber, a co-employee at the hospital, substantially corroborated plaintiff’s testimony in that he saw plaintiff slip and fall on a wet floor in the hospital’s kitchen. Weber testified that after he assisted plaintiff in getting up, she complained of hurting her arm. Both plaintiff and Mr. Weber testified that she reported the accident on the same day. The hospital records indicate the accident was reported on January 6, 1977, the same day plaintiff was taken under the care of Dr. Campbell for treatment of her injured right hand. All three orthopedists who examined plaintiff agreed that the accident and resulting injury was causally connected to the swelling of plaintiff’s hand and her continuing disability.
The trial court’s finding of an accident and injury is clearly supported by the evidence.
Defendant next contends that the trial court erred in finding plaintiff temporarily totally disabled. Temporary total disability is defined in LSA-R.S. 23:1221(1) which provides as follows:

“Compensation shall be paid under this Chapter in accordance with the following schedule of payments:

(1) For injury producing temporary total disability of an employee to engage in any gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds per centum of wages during the period of such disability . .

At the time of trial, plaintiff’s right hand was still swollen and plaintiff complained of substantial pain whenever she utilized her right hand in any task. The substantial pain was caused, according to Dr. Akin, by the sympathetic reflex dystrophy which was produced by plaintiff’s fall at the hospital and the trauma she sustained to her right hand. Both Dr. Akin and Dr. Norman P. Morin were of the opinion that plaintiff was unable to resume her former duties at the hospital due to the residuals of her right hand and wrist sprain.
Based upon the expert opinions of Drs. Akin and Morin the trial judge concluded that plaintiff was unable to return to her duties of bus girl/cook and could not engage in any gainful employment for wages without experiencing substantial pain. Accordingly, he found plaintiff to be totally disabled but because the evidence was unclear as to whether the disability will be *579 permanent he decreed her entitled to temporary total disability benefits.[4]
Defendant argues based upon the expert testimony of two psychiatrists, Dr. Keith Nabours and Dr. Gilíes Morin, who examined plaintiff on June 22, 1977 and Febru- , ary 28,1978, that the trial court’s finding of disability is error. The evidence offered by these two experts is to the effect that plaintiff suffers from no significant depressive symptoms and their examination of her disclosed no evidence of traumatic neurosis, conversion reaction or psychosis. Thus defendant argues that there is no basis for a valid finding of sympathetic reflex dystrophy.
As we appreciate the record the trial court based its finding of disability on the injuries to plaintiff’s hand and wrist which produced continued swelling and substantial pain and not because of any personality change or alleged traumatic neurosis. We do not conclude from the medical evidence in the record that the etiology of the condition known as sympathetic reflex dystrophy is totally psychogenic. Irrespective of the etiology of this condition the evidence in the record indicates clearly that as a result of the injuries suffered by plaintiff, her right hand and wrist remains constantly swollen and utilization of this extremity in any task produces substantial pain. We therefore conclude that the trial court did not err in finding plaintiff to be disabled.
It is now well settled that an injured employee is totally disabled if he is unable to pursue any gainful employment without experiencing substantial pain. Phillips v. Dresser Engineering Co., 351 So.2d 304 (La.App. 3rd Cir. 1977), writ denied 353 So.2d 1048; Rachal v. Highlands Ins. Co., 355 So.2d 1355 (La.App. 3rd Cir. 1978), writ denied 358 So.2d 645.
We likewise find no error in the trial judge’s award of penalties and attorney’s fees.
Weekly disability benefits were terminated on July 1, 1977, following the receipt of Dr. Campbell’s report on June 27, 1977, in which he stated that the plaintiff could resume her duties at the hospital cafeteria.
As was stated in Walker v. Gaines P. Wilson & Son, Inc., 340 So.2d 985 (La.1976):
“. . . At this point, of course, the insurer was entitled to terminate compensation payments in reliance upon this physician’s report. However, if subsequent to an initial optimistic report, an insurer receives medical information indisputably showing disability at a subsequent date, the insurer may not blindly rely upon the early report and solely on its basis avoid penalties for arbitrary nonpayment of compensation benefits indisputably due a disabled workman ...”
Defendant was informed on January 17, 1978, by Dr. Norman P. Morin, who examined plaintiff at defendant’s request, that plaintiff was disabled from returning to work because of the residuals of her right hand and wrist sprain. Despite this information, the record shows that defendant did not resume compensation benefits. This inaction, considered with the ample medical evidence available to defendant regarding plaintiff’s injury and disability, belies good faith on the part of defendant. The employer’s refusal to pay weekly benefits was correctly held to be arbitrary, capricious, and without probable cause. The trial judge did not err in awarding penalties and attorney’s fees.
Plaintiff answered the appeal seeking an increase in the attorney’s fees awarded by the trial court. This court feels that an additional award of $500.00 is reasonable compensation for the additional efforts expended by plaintiff’s attorney on the appeal of this case.
*580 Accordingly, for the above and foregoing reasons, the judgment of the trial court is amended to increase the award of plaintiff’s attorney’s fees from $3500.00 to the sum of $4,000.00. In all other respects the judgment is affirmed at appellant’s cost.
AMENDED AND AFFIRMED.

. Apparently plaintiff slipped and fell on a wet kitchen floor at the hospital on October 6, 1976, injuring her right thumb. However, plaintiff resumed her full duties in less than one week and as no evidence was adduced at trial to link this accident with plaintiffs subsequent disability, it is not a factor in the present suit.

. Aetna Casualty Company was originally made a defendant in this suit as St. Patrick’s insurer. However, in St. Patrick’s answer, the relationship was denied, and on August 1, 1977, Aetna was dismissed from the suit on plaintiff s motion. It is unclear what role Aetna played, but as Aetna was dismissed and no evidence was presented to the contrary, St. Patrick Hospital is a self-insurer for compensation purposes.

.Plaintiff was hospitalized at the Central Louisiana State Hospital, Pineville, Louisiana, from February 1, 1977 to February 9, 1977 for a nervous disorder. In this regard, two examining psychiatrists, Dr. Keith Nabours and Dr. Gilíes Morin, gave testimony at trial as to the plaintiffs mental condition.

. We express no opinion concerning correctness of the trial court’s award of temporary total disability benefits under LSA-R.S. 23:1221(1) rather than benefits for total permanent disability under LSA-R.S. 23:1221(2). See Walker v. Gaines P. Wilson & Son, Inc., 340 So.2d 985 (La.1976) and Dufrene v. St. Charles Parish Police Jury, 371 So.2d 378 (La.App. 4th Cir. 1979). Plaintiff did not appeal nor in her answer did she question the correctness of the award.