BOUTALL, Judge.
Defendant, The Great Atlantic and Pacific Tea Company, appeals from a judgment awarding workman’s compensation benefits to Jude Crosby at the rate of $141.00 per week for four hundred weeks and imposing attorney’s fees of $500.00. The defendant contends that the plaintiff did not carry his burden of proof to justify such an award and Crosby answers the appeal asking that the amount of attorney’s fees be increased and expert fees be taxed as costs.
Crosby was employed by Atlantic and Pacific Tea to load and unload merchandise *12 at its warehouse. On April 19,1979, Crosby was carrying a one hundred pound sack of coconuts when his foot became entangled with an empty pallet causing him to fall on his back. As a result of the accident, Crosby was taken to East Jefferson Hospital where he was examined and x-rays taken. The x-rays proved negative but the doctor believed that he had suffered a severe back sprain. A few days later, Crosby was instructed by Atlantic and Pacific Tea to go to the Fisher-Rabin Medical Center. Dr. Morris Fisher examined him and found an acute lumbosacral sprain. Dr. Fisher gave Crosby a prescription for pain and placed him on a regime of bed rest, tub soaks in hot water, and daily heat treatments in his clinic. Dr. Morris Levy of Fisher-Rabin examined Crosby on May 28, 1979, and he concluded that Crosby was having an exacerbation of his muscle sprain. In the meantime, Crosby had kept up with his heat treatments and bed rest.
On May 31, 1979, Fisher-Rabin referred Crosby to Dr. George Cary, an orthopedic surgeon, to render an opinion and suggest any possible treatment. Dr. Cary believed that Crosby had a strain in his lower back which was complicated by the fact that Crosby was 5' 10" and weighed 312 pounds. Dr. Cary recommended that he should be treated with bed rest, heat, mild exercise and a weight reduction program. Dr. Cary also saw Crosby on August 9, 1979, and recommended that the same measures should be followed which would allow him to eventually be able to return to work.
Dr. Fisher of Fisher-Rabin discharged Crosby on July 30,1979, and Crosby went to work the next day. After several hours, Crosby stopped work complaining of pain in his back. Crosby went back to Dr. Levy in August, and Dr. Levy felt that Crosby would probably be better in the middle of September. In the beginning of September, Crosby was referred by Dr. Levy to Dr. John Schuhmacher, a neurological surgeon. Dr. Schuhmacher testified that when he saw Crosby, he acted as if in great pain. Dr. Schuhmacher conducted a myelogram on Crosby on September 18, 1979, which proved normal. Dr. Schuhmacher saw Crosby for the last time on October 19, 1979, and he testified that Crosby was doing fairly well but that he complained of severe back pain which increased when he tried to walk. Dr. Schuhmacher offered no explanation for his pain and suggested that he return to work.
Dr. Levy testified that he examined Crosby several times in October and November, and he believed Crosby did not have anymore spasms. Dr. Levy testified that he finally discharged Crosby on November 26, because his examination showed that Crosby was normal. He also testified that from April 23 to November 26, Crosby received 133 diathermy treatments. On November 27, Crosby returned to work where he was told by the defendant’s warehouse manager that because he appeared to still be in pain, he could not return to work and that he could never return unless he was completely well. Crosby testified that at that time he was still having back trouble so in December he went to his own physician named Dr. John Watermeier, orthopedic surgeon. Dr. Watermeier testified that Crosby suffered from a moderate lumbar muscle spasm compounded by the fact that he was overweight. He testified that he treated Crosby conservatively with medication, exercise and weight loss. Dr. Watermeier classified Crosby as temporarily totally disabled.
Crosby received workmen’s compensation from the date of the accident until November 9, 1979. However, even after repeated demands, he did not receive compensation from the November 9 date until the time he was discharged by the employer’s doctor on November 26. It was for this reason that the court below assessed attorney’s fees of five hundred dollars.
We are of the opinion that the findings expressed by the trial judge are correct. In this instance, a man was injured while working at his job. He suffered an injury serious enough to warrant extensive treatment. Crosby underwent over one-hundred thirty heat diathermy treatments for his back pain. He went to see several doctors of the employer all of whom stated *13 that the plaintiff had incurred a serious back sprain and that it would take time to heal. After the company doctors discharged him on July 30, 1979, and again on November 26, 1979, Crosby attempted each time to return to work but couldn’t because of his weakened condition. After the second attempt to return was unsuccessful, he decided to go to a doctor of his own. Copies of Dr. Watermeier’s reports, together with a demand for reinstatement of compensation benefits were furnished to the defendant. Defendant refused to resume payments, relying instead on the previous reports submitted by its own doctors, not having anyone re-examine Crosby after being informed of Doctor Watermeier’s findings.
We agree with the reasons for judgment of the trial judge which we quote:
“The issue presented to this Court for determination is whether an employer may deny compensation benefits to an employee by relying on prior medical reports of treating physicians, when the employer is in receipt of subsequent medical reports from a qualified physician indicating disability.
The Louisiana Supreme Court has addressed this very issue in Walker v. Gaines P. Wilson & Son, Inc. 340 So.2d 985 (1976). In Walker, supra, plaintiff likewise injured his back while working as a laborer, and benefits were terminated upon receipt of the treating physicians discharge report. In a well-written opinion by Justice Tate, the Court noted, ‘At this point, of course, the insurer was entitled to terminate compensation payments in reliance upon this physician’s report. However, if subsequent to an initial optimistic report, an insurer receives medical information indisputable showing disability at a subsequent date, the insurer may not blindly rely upon the early report and solely on its basis avoid penalties for arbitrary non-payment of compensation benefits indisputably due a disabled workman.’
Defendant herein does not deny receiving Dr. Watermeier’s reports indicating continuing disability; it merely relied on the prior reports of Drs. Fisher, Levy, Cary and Schuhmacher. It made no attempt whatsoever to re-examine plaintiff or to contact Dr. Watermeier personally to discuss in detail his disability diagnosis.
Based therefore on the most recent medical report, i.e., that of Dr. Watermeier’s and in light of the fact that no medical reports current to those submitted by Dr. Watermeier were presented by defendant for the Court’s consideration, the Court finds plaintiff to be totally disabled from performing the type of work he did prior to his accident. However, as the evidence before the Court indicates that plaintiff’s condition may well improve with time, the Court limits its finding of total disability to four hundred (400) weeks, beginning from April 19,1979, the date of plaintiff’s accident.”
On the question of attorney’s fees, the trial court felt, unlike the situation in Walker, that the medical evidence was such that a bona fide dispute did exist. Accordingly, the court denied attorney’s fees and penalties on the overall issue. However, the court granted attorney’s fees of $500.00 because the defendant refused to pay compensation to the plaintiff for the period of November 9 to November 26.
On Appeal, the appellant concedes failure to pay this period as a result of clerical error. Accordingly, we agree with the assessment of attorney’s fees. However, the appellee’s answer seeks an increase in the amount of attorney’s fees. We agree with the findings of the trial judge that a bona fide dispute existed as to whether the injury was the cause of the continued disability and cannot say he abused his discretion in refusing an award for the entire period of disability. Additionally, because this appeal involves the question of the four hundred week benefit period and not the two week period beginning on November 9, the award of $500.00 for attorney’s fees for that period is sufficient and should not be increased.
The other issue raised by answer to the appeal is that this court should set *14 expert fees and tax them and other costs as court costs. This issue was the subject of a rule to tax costs which was continued indefinitely in the trial court from June 12,1981. Court costs and expert fees may be assessed at trial as part of a judgment or at a separate rule to show cause. See LSA C.C.P. 1920; R.S. 13:3666. This court" cannot hear evidence regarding costs and the rule below is still pending. Accordingly, we refer this to the lower court for a hearing to determine court costs and expert fees.
Costs of this appeal are assessed against appellant.
AFFIRMED, RULE FOR COSTS REMANDED.